**James R. SIMS, Plaintiff-Appellant,**

v.

**Virginia S. YOUNG, Individually and as Mayor of the City of Fort Lauderdale, Florida, et al., Defendants-Appellees.**

No. 76-1091.

United States Court of Appeals, Fifth Circuit.

July 27, 1977.

---

7. Such as the consumer's own negligence. *See West v. Caterpillar Tractor Co., Inc.*, 336 So.2d at 91–92.

Joseph C. Segor, Joseph H. Kaplan, Miami, Fla., for plaintiff-appellant.

W. W. Caldwell, Jr., Donald R. Hall, Fort Lauderdale, Fla., for defendants-appellees.

Before THORNBERRY, GODBOLD and FAY, Circuit Judges.

GODBOLD, Circuit Judge:

This is a suit for declaratory judgment and injunctive relief[1] brought under 42 U.S.C. § 1983 by a city fire captain against city officials who had suspended him for a temporary period of 20 days. Captain Sims has since been reinstated.

The case was presented to the district court on stipulated facts. Sims, the president of his local firefighters union, published in the union newsletter a fairly intemperate article blasting the position of the city's labor relations officer in ongoing labor arbitration of an unstipulated nature. Shortly thereafter, Sims received a letter from the city manager informing him of his suspension. The letter stated as a reason for the suspension the violation of a city rule against "wantonly offensive language toward a fellow employee." Sims brought suit to declare this city rule violative of his First Amendment rights under *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), both facially and as applied. He also added pendent claims under the Florida right to work law,[2] the now-repealed Fire Fighters Bargaining Act,[3] and Fla.Stat.Ann. § 447.03 (Supp.

---

1. Plaintiff voluntarily dismissed with prejudice his damage claims. The precise nature of the injunctive relief sought has never been specified.

2. "The right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union or labor organization. The right of employees, by and through a labor organization, to bargain collectively shall not be denied or abridged. . ."

   Fla.Const. art. 1, § 6.

3. Fla.Stat.Ann. § 447.21(3) (Supp.1977), *repealed*, Fla.Laws 1974, ch. 74–100, § 8:

   "It is declared to be the public policy of this state that the right of persons affected herein to work shall not be deprived or abridged on account of membership or non-

membership in any union or organization. All such persons shall be protected in the exercise of the right, freely and without fear of reprisal, to form, join, and assist unions or organizations or to refrain from such activity."

Section 447.22(1) excluded from coverage
   "(a) Any individual having authority, in the interest of the public employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees; or
   "(b) Any individual who has as one of his major responsibilities the direction of other employees, the adjustment of their grievances or the recommendation of such action, or the evaluation of their performance.
   "In order to qualify as a supervisory employee an individual must have the authority to

1977). The district court "dismissed for lack of standing."

The court's rationale was based on its interpretation of the interplay of two city personnel provisions. The "wantonly offensive language" proscription, Fort Lauderdale Civil Service Personnel Rule XII, § 4F, constitutes a ground that authorizes dismissal. By itself, it grants no authority for the lesser punishment of suspension. It is Fort Lauderdale City Charter § 61(b) which allows the city manager to

> Appoint, *suspend*, demote and/or remove any subordinate officers and employees under his jurisdiction, *in accordance with* the Charter and *applicable rules.* (Emphasis supplied.)

Reasoning that Sims challenged not the charter provision but the rule, the district court found that he had not been injured as a result of the rule, in the sense required by the doctrine of standing. We reverse.

█ The district court's reasoning did not give effect to the reality of plaintiff's theory in his pleadings as well as the stipulated facts. The prayer for relief urged that both the charter and the rule be declared unconstitutional. The stipulation recognized this by acknowledging that the 20-day suspension was a result of the interplay of rule and statute, and so did the suspension letter itself. We need not determine whether Sims has standing to challenge the facial validity of the rule in such circumstances, for he also challenges the application of the rule to him. As his pleadings show, Sims complains that the rule was applied, through the general powers enumerated in the charter, to bring about his injury. This is all that the doctrine of standing requires of him in terms of causation.

█ Of course, Sims has now been reinstated. But he carries a classic "personal stake" in the outcome of this litigation: a blot on his record. Perhaps this stake does not rise to the level of a liberty interest,

*Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). But certainly it is enough to satisfy the injury-in-fact requirement of standing, a quite different concept, *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 829–830, 25 L.Ed.2d 184, 188 (1970). *See U. S. v. SCRAP*, 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 2417, 37 L.Ed.2d 254, 270 n. 14 (1973). *Thurston v. Dekle*, 531 F.2d 1264, 1269 (CA5, 1976), is not to the contrary. The named plaintiff in *Thurston* was dismissed following his suspension. His due process challenge, which was solely against the procedures resulting in his suspension, was inadequate to confer standing because he had later been constitutionally dismissed anyway. Here, Sims has continued in his job but in doing so bears a suspension that he alleges was unconstitutional. His stake in the controversy is far greater than Thurston's.

█ This brings us to the merits: whether the city infringed Sims' First Amendment rights in suspending him for his union newsletter publication. On this issue, the district court merely "pause[d] to note" in one sentence that *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), "would appear to support" the constitutionality of the personnel rule. For three reasons, we do not deem it advisable to pass on the propriety of this conclusion. First, *Pickering* requires more factual development than has been had here. An important factual inquiry, for instance, would be the extent to which the remarks frustrated discipline by superiors or harmony among co-workers by virtue of a need for "close working relationships." 391 U.S. at 570, 88 S.Ct. at 1735, 20 L.Ed.2d at 818. The question of whether Sims' statement, which is not a model of clarity, was "substantially correct," *id.,* is also one that requires more knowledge than we now have regarding the position taken by the labor relations officer and the union during the arbitration pro-

---

perform a preponderance of the specified acts of authority."
The relations between all Florida public employees and employers are now governed by

the Public Employees Relations Act, Fla.Stat. Ann. §§ 447.201 *et seq.* (Supp.1977).

ceedings.[4] Second, even if we regard the reference to *Kennedy* as a holding, it fails to articulate the rationale behind the result. Finally, considerations of efficiency dictate a remand here. The district court never even arguably passed on the pendent state claims brought by Sims. In view of our position on standing, we would have to remand this case for disposition of these claims anyway.[5]

REVERSED and REMANDED.

4. These sorts of fact questions were irrelevant in *Kennedy* because the challenge to the federal civil service statute there was a facial one. *See* 416 U.S. at 162–64, 94 S.Ct. at 1648–1649, 40 L.Ed.2d at 38–39; *Kennedy v. Sanchez*, 349 F.Supp. 863, 866 (N.D.Ill.1972) (three-judge court).

5. Counsel for the city took the position at oral argument that Sims had waived his pendent claims by not making them a subject of this appeal. Sims fully briefed these claims in his memorandum of law to the trial court. This appeal centers around the trial court's refusal to give him standing to litigate the constitutional claim on which his state claims depend. It thus in no way relates to the pendent claims except to confirm jurisdiction in the trial court to hear them.