United States Court of Appeals,

Eleventh Circuit.

No. 94-3407.

Sylvia HILL, Plaintiff-Appellant,

v.

Wayland Clifton, individually and as the Chief of Police and agent
for the city of Gainesville, City of Gainesville, Defendants,

  Gainesville, City of, a municipal corporation of the State of
Florida, Defendant-Appellee.

Feb. 14, 1996.

Appeal from the United States District Court for the Northern
District of Florida. (No. 91-10118-MMP), Maurice Mitchell Paul,
Chief Judge.

Before ANDERSON and BLACK, Circuit Judges, and FAY, Senior Circuit
Judge.

FAY, Senior Circuit Judge:

Sylvia Hill, a Police Officer, brought suit against the City
of Gainesville, alleging gender discrimination, equal protection
violations, and retaliation for the exercise of her First Amendment
rights. The District Court granted summary judgment to the City on
all counts. Because the Police Chief was not the final
policymaking authority, and because there is no evidence that the
City Manager approved of any illegal or improper motive the Police
Chief may have had, we affirm the District Court's decision.

I. BACKGROUND

Sylvia Hill became the first female Master Sergeant at the
Gainesville Police Department in 1986, the first female Lieutenant
in 1987, the first female Executive Lieutenant in 1988, and the
first female in Internal Affairs in 1990. She applied for a
promotion to Captain when positions opened up in 1987 and again in

1988, but each time she was passed over.  In 1990, an experienced male homicide detective was promoted to Acting Captain and appointed to an inter-agency task force investigating the serial murders known as the Gainesville Student Homicides.  Hill filed an employee grievance alleging gender discrimination, even though she conceded that she had no homicide experience and was not qualified to lead the task force.  This grievance was denied by the City Manager, Paul White.

In early 1991, Hill joined in initiating an internal affairs investigation of the Police Chief, Wayland Clifton, Jr., regarding his possible involvement in alleged misconduct by a group of police officers and employees calling themselves "Hallucinations 2000".  City Manager White ordered an independent investigation by Lt. Roy Dickey of the Tallahassee Police Department.  His investigation revealed that:  1) Clifton was not aware of the existence of the group, 2) the group was innocuous and well-intentioned, and 3) it had no effect on promotions.

Meanwhile, Hill had been transferred from Internal Affairs to Patrol division, with no loss of rank, pay, or benefits.  The City alleges that Lt. Sherry Scott, after assuming command of Internal Affairs, discovered that several investigations had not been completed and that other files were in disarray.  Clifton, in consultation with City Manager White, ordered a performance audit of Internal Affairs.  According to the City, this audit uncovered serious flaws:  investigative files were missing, some cases were never completed, some investigations were untimely or unauthorized, certain findings were inconsistent with the evidence, and in some

cases Clifton's direct orders had been ignored.

By early June, both the audit and Lt. Dickey's investigation into Hallucinations 2000 were complete. Hill alleges that at this point Clifton was willing to transfer her to a more desirable position within the police department, so long as she agreed not to testify before a grand jury investigating Clifton and Hallucinations 2000. In any event, in July, Hill and the two other transferred Internal Affairs officers testified before the grand jury.[1] Soon after, in August of 1991, Clifton brought employee misconduct charges against Hill. Hill claims these charges were in retaliation for her gender discrimination claim and her testimony before the grand jury. After investigation, almost all of those charges were sustained, including numerous incidents of willful neglect of duty, numerous incidents of incompetence, and one incident of insubordination. Clifton demoted Hill and placed her on probation. She appealed her demotion through the City's administrative grievance procedures, but the City Manager ultimately denied her relief.

## II. STANDARD OF REVIEW

Summary judgment is proper if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corporation v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The evidence must be viewed in the light most favorable to the non-moving party. *Augusta Iron and*

---

[1]The grand jury subsequently rejected all of Hill's accusations against Clifton.

*Steel Works, Inc. v. Employers Insurance of Wausau,* 835 F.2d 855, 856 (11th Cir.1988).

### III. ANALYSIS

Municipalities may be sued under 42 U.S.C. § 1983 if an official policy or custom of the municipality violates constitutional requirements. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978). Only those officials who have final policymaking authority may render the municipality liable under § 1983. *Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Hill concedes that Clifton was not the final policymaking authority in regard to the actions taken against Hill. Thus the actions of Clifton cannot impose liability on the city.

Hill argues that White, the City Manager, was the final policymaker[2] as to such personnel matters and that White ratified the actions of Clifton. A city may be held responsible where the authorized policymakers "approve a subordinate's decision *and the basis for it.*" *City of St. Louis v. Prapotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988) (emphasis added). Even though White approved of Clifton's actions, and even assuming that Clifton's actions were illegal because they were based on improper motives, the city would not be liable because Hill has simply presented no evidence that White approved of *the basis* for Clifton's actions: the improper motives.

---

[2]The District Court held that the City Commission, not the City Manager, had final policymaking authority in Gainesville. For the purposes of this opinion, we assume without deciding that the City Manager has ultimate authority.

## IV. CONCLUSION

Because Clifton, the police chief, was not the final policymaking authority, and because there is no evidence that White, the City Manager, approved of any illegal or improper motive Clifton may have had, we AFFIRM the District Court's decision.