Albert A. ARENAL, Plaintiff,

v.

**CITY OF PUNTA GORDA, FLORIDA and John Makholm, individually, and in his official capacity as Chief of Punta Gorda Police Department, Defendants.**

No. 96–32–CIV–FTM–17.

United States District Court,
M.D. Florida,
Fort Myers Division.

July 16, 1996.

As Corrected July 17, 1996.

Ronald W. Fraley, Fraley & Fraley, P.A., Tampa, FL, for Albert A. Arenal.

Robert C. Shearman, Henderson, Franklin, Starnes & Holt, P.A., Ft. Myers, FL, for City of Punta Gorda.

### ORDER ON DEFENDANTS' MOTIONS TO DISMISS

KOVACHEVICH, Chief Judge.

This cause comes before the Court on the following motions, responses, and supporting documents:

1. Defendant's, John A. Makholm (hereinafter Police Chief), Motion to Dismiss Plaintiff's Complaint for Failure to State Claim upon which Relief can be Granted (Docket No. 14);

2. Defendant's, City of Punta Gorda (hereinafter the City), Motion to Dismiss and Memorandum in Support (Docket No. 16);

3. Plaintiff, Albert A. Arenal's (hereinafter Arenal), Response to Defendants' Motions to Dismiss (Docket No. 21);

4. The City's Court Ordered Response Regarding Subject Matter Jurisdiction (Docket No. 27); and

5. Arenal's Response to Court's Order to Respond (Docket No. 28).

On April 3, 1996, Arenal filed a three (3) Count Complaint (Docket No. 1) against the City and the Police Chief. In Count I, Arenal alleges that the City and the Police Chief violated his First Amendment rights and seeks to hold them accountable under 42 U.S.C. § 1983 (1994). In Count II, Arenal contends that the City and the Police Chief deprived him of his due process liberty interests, also pursuant to Section 1983. Finally, in Count III, Arenal asserts that the Police Chief defamed him under the common law of Florida.

In their motions before the Court, the City and the Police seek dismissal of Arenal's Complaint. They argue that all three (3) of Arenal's Counts fail to state claims upon which relief can be granted.

## ALLEGED FACTS

In 1986, Arenal began his career as a police officer for the city of Punta Gorda, Florida. After some six (6) years of continual promotions, Arenal was ultimately appointed to Captain and commanded the police department's Criminal Investigations Section (hereinafter CIS).

In January of 1995, however, things changed at the City's police department. Defendant John Makholm assumed the position of Acting Chief of Police and, a month later, the position became permanent. Within a few months, the Police Chief assigned Arenal to conduct a criminal investigation into alleged insurance fraud by members of the City's fire department. Consequently, Arenal worked closely with the Charlotte County State Attorney's Office (hereinafter SAO) and was ultimately told by the SAO to maintain confidentiality regarding the investigation. Thus, Arenal could not discuss the fire department investigation with the Police Chief because the SAO suspected that the Police Chief knew of the fraud and failed to prevent it.

On July 10, 1995, the Police Chief opened an internal investigation on Arenal. Within five (5) days, the Police Chief removed Arenal from his position as the SAO's liaison officer without giving any reason. After a few confrontations, Arenal told the Police Chief to be prepared to testify to a Grand Jury regarding the insurance fraud investigation. The Police Chief then complained of Arenal's declining work performance.

As the Grand Jury date drew closer, the Police Chief demanded the Arenal keep him informed as to the status of the insurance fraud investigation. Arenal declined, reminding the Police Chief about the confidential nature of the investigation.

On September 16, 1995, the Grand Jury issued a report, which included a finding that the Police Chief "violated the public trust by having knowledge of all the elements of the fraud [within the fire department], [was] in a position to prevent the perpetration of the fraud, and did not take timely action to do so." (Docket No. 1, pp. 8–9).

In early October, 1995, although the Police Chief had previously removed him from the SAO liaison position, Arenal requested permission to assist the SAO with discovery on the fire department case. The Police Chief refused, stating that what Arenal did on his own time was his own business. Therefore, Arenal assisted the SAO during his personal time.

On October 11, 1995, the Police Chief held a press conference regarding the SAO's investigation and the Grand Jury's report. He stated that Arenal had "ulterior motives" behind his participation in the investigation; that Arenal was a "big Republican" who was politically motivated; and that Arenal was part of a conspiracy with the SAO.[1]

In late October, 1995, the Police Chief opened another internal investigation of Arenal. The first internal investigation resulted in a finding on no wrongdoing by Arenal. The Police Chief sent both the new and the

1. This press conference serves as the basis for Arenal's defamation count against the Police Chief.

old internal investigation to an outside agency. However, upon timely action by Arenal, a state court temporarily enjoined both internal investigations.

In early January of 1996, Arenal wrote a letter to the SAO requesting that the Grand Jury investigate the management of the City's police department. Arenal delivered copies to the Police Chief's office and the City Manager. Soon thereafter, on January 8, 1996, the Police Chief issued a memorandum to the City Manager recommending Arenal's termination. As grounds, the Police Chief cited Arenal's request for a Grand Jury investigation. Two (2) days later, this request for Arenal's termination was reported by a local newspaper, the Charlotte, A.M.

In a follow-up letter to the City Manager on January 11, 1996, the Police Chief recommended immediate suspension of Arenal with pay, pending a decision concerning the recommended termination. The Police Chief felt that this action was necessary in light of the "seriousness of the offenses" set forth in his previous letter to the City Manager.

Accordingly, on January 17, 1996, the City Manager notified Arenal that he was immediately suspended with pay. The City Manager also demanded that Arenal return all uniforms, badges, firearms, and police car. The locks to Arenal's officer were changed, and he was instructed to stay away from the City's property and employees.[2]

## STANDING

■ The Constitution restricts federal courts' subject matter jurisdiction to "cases" or "controversies." U.S. Const. art III, § 2; *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). Perhaps the "most important" of these jurisdictional doctrines is that of standing. *Allen*, 468 U.S. at 750, 104 S.Ct. at 3324. In order for a plaintiff to have standing, he or she must: (1) suffer an injury in fact that is (2) fairly

traceable to the defendants' conduct and is (3) likely to be redressed by the requested relief. *Id.* at 751, 104 S.Ct. at 3324–25.

■ Because Arenal alleges that he was suspended *with pay*, this Court became concerned about his standing in bring his Section 1983 claims. Thus, the Court *sua sponte* ordered the parties to respond to the issue of whether Arenal suffered sufficient "injury in fact." (*See* Docket No. 26).

■ In order to constitute an "injury in fact," the alleged injury "must be, for example, distinct and palpable . . . and not abstract or conjectural or hypothetical." *Allen*, 468 U.S. at 751, 104 S.Ct. at 3324 (internal citations omitted). While it must be distinct and palpable, the alleged injury need not be economic. *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 486, 102 S.Ct. 752, 765–66, 70 L.Ed.2d 700 (1982).

In the vast majority of First Amendment retaliation cases, the plaintiff-employees have suffered "injury in fact" by being discharged or suspended without pay. *See, e.g., Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1556 (11th Cir.1995) (discharged); *Berdin v. Duggan*, 701 F.2d 909, 910 (11th Cir.) (discharged), *cert. denied*, 464 U.S. 893, 104 S.Ct. 239, 78 L.Ed.2d 230 (1983); *Hansen v. Soldenwagner*, 19 F.3d 573, 574–75 (11th Cir.1994) (suspended for five (5) days, apparently without pay); *Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1232 (11th Cir.1992) (suspended for three (3) days without pay); *Porter v. Heckler*, 780 F.2d 920, 922 (11th Cir.1986) (suspended for thirty (30) days without pay).

However, under binding precedent from the Fifth Circuit Court of Appeals,[3] a suspension with pay from public employment can satisfy "injury in fact" under certain circumstances. In *Sims v. Young*, 556 F.2d 732 (5th Cir.1977), a city temporarily suspended its fire captain for twenty (20) days with pay.

---

**2.** Although not alleged in his complaint, Arenal's suspension lasted twenty-seven (27) days with pay before he was reinstated as a Captain on February 12, 1996. (Docket No. 28 Plaintiff's standing response, p. 4). The City also states that Police Chief Makholm is no longer employed by the City. (Docket No. 27, p. 4 n. 1).

**3.** All decisions of the Fifth Circuit Court of Appeals handed down before the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit Court of Appeals. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981).

The city told him that he had violated a city rule against "wantonly offensive language toward a fellow employee." Soon thereafter, the fire captain brought suit under 42 U.S.C. § 1983, alleging that his First Amendment rights were violated by the city's rule, facially and as applied. The district court dismissed for lack of standing.

On appeal, the Fifth Circuit reversed, finding that the fire captain sustained a sufficient "injury in fact." The *Sims* court reasoned that the fire captain carried "a classic 'personal stake' in the outcome of [the] litigation: a blot on his record. Perhaps this stake did not rise to the level of a liberty interest . . . [,] [b]ut certainly it is enough to satisfy the injury-in-fact requirement of standing, a quite different concept." 556 F.2d at 734 (citations omitted).

Just as the fire captain alleged a sufficient "injury in fact" in *Sims,* so does Arenal in the instant case. In his complaint, Arenal contends that, as a result of his suspension, he was embarrassed, denigrated, and stigmatized in the eyes of other City employees and the community. (Docket No. 1, ¶¶ 50, 64). Because this alleged injury is just as "distinct and palpable" as the "blot" on the *Sims* fire captain's record, Arenal has standing. Accordingly, this Court has subject matter jurisdiction over his federal, and pendent state law, claims.

## MOTIONS TO DISMISS

*I. The Standard for Dismissal.*

■ Under *Conley v. Gibson,* a district court should not dismiss a complaint "for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts" that would entitle the plaintiff to relief. 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *accord Bracewell v. Nicholson Air Services, Inc.,* 680 F.2d 103, 104 (11th Cir.1982). To survive a motion to dismiss, a plaintiff may not merely "label" his or her claims. *Blumel v. Mylander,* 919 F.Supp. 423, 425 (M.D.Fla.1996). At a minimum, the Federal Rules of Civil Procedure require "a short and plain statement of the claim" that "will give the defendant fair notice of what the plaintiff's claim is and the

grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. at 103 (quoting Fed. R.Civ.P. 8(a)(2)).

■ In deciding a motion to dismiss, this Court will examine only the four corners of the complaint. *Rickman v. Precisionaire, Inc.,* 902 F.Supp. 232 (M.D.Fla.1995). Also, the Court must accept a plaintiff's well pled facts as true and construe the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Howry v. Nisus, Inc.,* 910 F.Supp. 576 (M.D.Fla.1995).

*II. Count I: First Amendment.*

■ The First Amendment, as applied to the States through the Fourteenth Amendment Due Process Clause, protects public employees from some, but not all, restraints on their right of free speech. *Beckwith v. City of Daytona Beach Shores,* 58 F.3d 1554, 1563 (11th Cir.1995). In the public employment context, First Amendment jurisprudence seeks a balance between individual rights and employment productivity. On the one hand, public employees do not relinquish "the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest." *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). On the other hand, States, as employers, have an interest "in promoting the efficiency of the public services it performs through its employees." *Id.*

In the Eleventh Circuit Court of Appeals, First Amendment retaliatory government employment decisions are examined under a four (4) part test as announced in *Bryson v. City of Waycross,* 888 F.2d 1562 (11th Cir. 1989). The *Bryson* test examines "(1) whether the employee's speech involves a matter of public concern, (2) whether the employee's interest in speaking outweighs the government's legitimate interest in efficient public service, (3) whether the speech played a substantial part in the government's challenged employment decision, and (4) whether the government would have made the same employment decision in the absence of the protected conduct." *Beckwith,* 58 F.3d

at 1563–64 (citing *Bryson,* 888 F.2d at 1565–66).

It is important to note that the "first two elements of the *Bryson* test are questions of law designed to determine whether the employee's speech is protected by the First Amendment." The last two elements, however, "are questions of fact designed to determine whether a retaliatory motive was the legal cause of the challenged employment decision." *Beckwith,* 58 F.3d at 1564.

### A. Protected Speech

■ In the present case, the Court must first determine, as a matter of law, whether Arenal's alleged speech is protected by the First Amendment. In his Complaint, Arenal contends that his "participation in the fire department investigation[,] his testimony before the Grand Jury, and his request for an investigation into the management of the police department all constituted speech and conduct that was a matter of public concern." (Docket No. 1, ¶ 56). Arenal further alleges that his "interest in speaking and acting in connection with [these] political matters outweighed any legitimate interest by [the City] in efficient public service." (Docket No. 1, ¶ 57).

In response, the Police Chief argues that Arenal's speech was unprotected because he exercised it during "activities [in which] he participated ... as an employee rather than a citizen." (Docket No. 14, p. 4).[4]

The Court concludes that, as a matter of law, Arenal's participation in, and testimony relating to, the fire department investigation and his request for a police department investigation are protected by the First Amendment. First, his speech clearly involved matters of public concern because Arenal's participation in the fire department investigation and resulting Grand Jury testimony against the Police Chief "[brought] to light actual or potential wrongdoing or breach of public trust...." *Connick v. Myers,* 461 U.S. 138, 148, 103 S.Ct. 1684, 1691, 75 L.Ed.2d 708 (1983). Indeed, this potential wrongdoing is evidenced by the Grand Jury's findings. After discovering that the Police Chief was involved with the fire department, Arenal also spoke of matters that would concern the public by requesting a similar investigation into the police department, which potentially involved another breach of the public trust.

Not only were Arenal's activities matters of public concern, but his interest in speaking about them outweighs the government's efficiency interest. The Court has already established *supra* that Arenal's activities greatly concerned the public. Arenal's interest, then, easily outweighs the City's interest because, as an employer, the City lost little, if any, efficiency from Arenal's activities. Indeed, according to the Complaint, it was the Police Chief who assigned Arenal to investigate the fire department. Furthermore, after the Police Chief terminated Arenal's liaisonship with the SAO, Arenal participated with the SAO during his personal time. Finally, the City may ultimately *gain* efficiency from Arenal's activities if they lead to the discovery of fraud and/or waste within the City's departments.

Overall, assuming Arenal can prove his allegations at trial, the content, form, and context of Arenal's alleged activities inevitably lead this Court to conclude that Arenal has satisfied the first two elements of the *Bryson* test.

### B. Causation

■ Arenal also alleges sufficient facts that, if proven, would support an affirmative finding of fact on elements three (3) and four (4) of the *Bryson* test. Specifically, Arenal contends that his "speech played a substantial part in the decision to suspend" him and, but for his speech, "he would not have suffered adverse action and/or have been suspended." (Docket No. 1, ¶¶ 58–59). This allegation unquestionably tracks the language of *Bryson* and *Beckwith,* and the Court rejects the City's cursory argument to the contrary.

(*See* Docket No. 16, pp. 1–4).

---

4. The City did not advance any argument regarding the first two elements of the *Bryson* test.

## C. Constitutional Deprivation

■ In their respective memoranda, the City and the Police Chief argue that because Arenal was merely suspended with pay, he suffered no constitutional deprivation. However, the authorities advanced by them are wholly unpersuasive because they relate to procedural due process rather than the First Amendment. Furthermore, contrary to the Police Chief's assertion, a First Amendment retaliation claim potentially encompasses any adverse employment decision, including a suspension with pay, because the right upon which such claim is based "is the right to free speech, not the right to a job." *Beckwith,* 58 F.3d at 1563. Hence, the deprivation that is key is that to speech, not employment.

Therefore, based on Arenal's preliminary satisfaction of the *Bryson* test, this Court **denies** the City's and the Police Chief's motions to dismiss Count I.

## III. Count II: Due Process Liberty Interest.

■ Under the Fourteenth Amendment, States are prohibited from depriving anyone of his or her "life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. The Due Process Clause gives rise to two (2) different constitutional doctrines: procedural due process and substantive due process. *McKinney v. Pate,* 20 F.3d 1550, 1555 (11th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995). These doctrines are distinct in that a "violation of a substantive due process right ... is complete when it occurs[,] .... and no amount of process can justify its infringement. By contrast, a procedural due process violation is not complete 'unless and until the State fails to provide due process.'" *Id.* at 1557 (quoting *Zinermon v. Burch,* 494 U.S. 113, 123, 110 S.Ct. 975, 982, 108 L.Ed.2d 100 (1990)).

■ In the instant case, Arenal apparently asserts a claim for substantive due process. He merely alleges that his "liberty" interests have been deprived, but does not allege that he received a lack of "due" process. *See id.* at 1550 (stating that "the state may cure a procedural deprivation by providing a later procedural remedy; only when the state *refuses to provide a process* sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise"). Indeed, the Police Chief correctly points out that Arenal's Complaint "fails to allege that he ever sought a preliminary hearing or that his request was denied." (Docket No. 14, p. 4). Therefore, to the extent that Arenal intended Count II to state a claim for procedural due process, it has clearly failed to do so.

■ Arenal also fails to state a claim for substantive due process. As the Eleventh Circuit stressed in *McKinney,* "[t]he substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty[.]' The Supreme Court has deemed that most—but not all—of the rights enumerated in the Bill of Rights are fundamental; certain unenumerated rights (for instance, the penumbral right of privacy) also merit protection. It is in this framework that fundamental rights are incorporated against the states." *McKinney,* 20 F.3d at 1556 (internal citations omitted).

Nowhere in Arenal's twenty-one (21) page Complaint do the words "fundamental right" appear. Although Arenal's Complaint speaks of freedom of speech, a right enumerated in the Bill of Rights, he asserted a deprivation of that right in Count I. Indeed, as the *McKinney* court explained, Arenal's free speech rights are incorporated against State entities, such as the City and the Police Chief, through the substantive component of the Due Process Clause of the Fourteenth Amendment. 20 F.3d at 1556. Therefore, to the extent that Arenal wishes to assert a deprivation of his right to free speech in Count II, it duplicates Count I.

Not only did Arenal fail to use the words "fundamental right," he also failed to allege a deprivation of any right that is considered "fundamental." First, Arenal contends that, as a result of the City's and the Police Chief's actions, he "has been stigmatized in connection with the denial of rights and status recognized under state law" and that his state-created rights and status have been "distinctly altered." (Docket No. 1, ¶¶ 64–

65). Also, Arenal alleges that he was "further deprived of a liberty interest by virtue of [the Police Chief's] placing of defamatory material in Arenal's personnel file." (Docket No. 1, ¶ 66). Finally, Arenal states that he had a "property interest" in his position as Captain "[p]ursuant to the Police Officers Bill of Rights, the Rules and Regulations Manual of the Police Department, [and] the Personnel Rules and Regulations for the City of Punta Gorda." (Docket No. 1, ¶ 68).

On their face, none of these alleged "liberty" or "property" interests rise to the level of a "fundamental right." In *McKinney*, the Eleventh Circuit unambiguously concluded that "areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection." 20 F.3d at 1556. Arenal's reputation and other "rights and status" as a Captain with the City's police department are, at most, creatures of state law. They are not substantive due process rights. Thus, the authorities that Arenal advances, *e.g., Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); and *Von Stein v. Brescher,* 904 F.2d 572 (11th Cir.1990), are inapplicable in that they concern only procedural due process.

Therefore, because Arenal has failed to state a claim for either procedural or substantive due process, the Court **dismisses** Count II of Arenal's Complaint.

*IV. The City's Liability.*

■ In its motion to dismiss, the City advances two (2) arguments regarding its liability as a municipality. First, the City argues that it is immune from punitive damage claims under 42 U.S.C. § 1983. The Court agrees with the City, *see City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981), and hereby strikes those portions of Counts I and II which seek punitive damages from the City or the Police Chief in his official capacity. (*see* Docket No. 1, pp. 17, 19).

■ Although the Court agrees with the City's first argument, it does not agree with its second one, that Arenal has failed to state a claim against it based on his allegation that the City's manager approved the Police Chief's suspension recommendation. Under *Monell v. Department of Social Services of City of New York,* a municipality may be sued under Section 1983 if its "policy or custom" was "the moving force of the constitutional violation." 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). As the Eleventh Circuit recently noted, "[o]nly those officials who have final policy-making authority may render the municipality liable under § 1983." *Hill v. Wayland,* 74 F.3d 1150, 1152 (11th Cir.1996) (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). If a subordinate's decision is at issue, a "city may be held responsible where the authorized policymakers 'approve [the] subordinate's decision *and the basis for it.*'" *Hill,* 74 F.3d at 1152 (quoting *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988)) (emphasis by the Eleventh Circuit).

In the present case, Arenal has alleged that his "suspension, as recommended by [the Police Chief], was ratified and approved by [the City's manager], who was delegated final policy making authority in personnel decisions." (Docket No. 1, ¶ 60). Therefore, having alleged that an "authorized policymaker" of the City "approved" a decision by a subordinate, the Police Chief, Arenal must also allege that the City's manager "approved the basis" of the Police Chief's decision.

The Court finds that Arenal has alleged sufficient facts to put the City on "fair notice" that its manager approved the basis of the Police Chief's recommendation to suspend Arenal. *See* Fed.R.Civ.P. 8(a)(2). Arenal specifically alleges that the Police Chief issued two (2) memorandums to the City's manager. These memorandums stated the Police Chief's grounds for his recommendation, Arenal's request for the Grand Jury to investigate the police department. These allegations, if proven, could easily support an inference that the City's manager "approved the basis" of the Police Chief's recommendation. Thus, the Court rejects the City's second argument.

*V. Count III: Defamation.*

■ Regarding Count III, Arenal's defamation claim against the Police Chief, the

Police Chief briefly argues that his alleged statements were absolutely privileged. As support, the Police Chief advances *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959).

*Barr* is easily distinguishable from the present case. In *Barr,* the Supreme Court held that the head of an "important" federal executive agency was absolutely privileged in issuing a press release regarding his intention to suspend certain agency employees from duty. *Id.* at 574, 79 S.Ct. at 1341. Labeling it a "close" case, the Court reasoned that, under the circumstances, "a publicly expressed statement of the position of the agency head, announcing personnel action which he planned to take in reference to the charges so widely disseminated to the public, was an appropriate exercise of the discretion which an officer of that rank must possess if the public service it to function effectively." *Id.* at 574–75, 79 S.Ct. at 1341. Furthermore, the Court emphasized the fact that the agency head acted "within the outer perimeter of [his] line of duty." *Id.* at 575, 79 S.Ct. at 1341.

Unlike the *Barr* agent, the Police Chief is not an executive agent, federal or otherwise. He is merely the head of the City's police department and this position is a subordinate one. Furthermore, Arenal has alleged that at least part of the Police Chief's challenged conduct occurred "outside his official duties," whereas the *Barr* agent acted "within the outer perimeter of" his duties. These distinctions between *Barr* and the present case direct the Court to **deny** the Police Chief's motion to dismiss Count III. Accordingly, it is

**ORDERED** that Count II of Plaintiff's Complaint be **DISMISSED;** Plaintiff's claims for punitive damages against the City and the Police Chief in his official capacity be **STRICKEN;** the other requests in Defendants' motions be **DENIED;** and the Defendants have ten (10) days from the date of this Order to answer the Complaint.

**DONE and ORDERED.**