R. Brock **GAINER** and Marie F. Gainer Plaintiffs,

v.

**CITY OF WINTER HAVEN, FLORIDA, Defendant.**

No. 8:00CV1098T17MAP.

United States District Court, M.D. Florida. Tampa Division.

June 13, 2001.

Thomas J. Pilacek, Thomas J. Pilacek & Associates, Winter Springs, FL, for R. Brock Gainer, Marie F. Gainer.

Robert Joseph Antonello, Law Office of Robert J. Antonello, Winter Haven, FL, Donald T. Ryce, Hogg, Ryce & Hudson, Miami Beach, FL, for City of Winter Haven, FL.

### ORDER ON DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

KOVACHEVICH, District Judge.

This cause comes before the Court on the following Motion and response: Defen-

dant, City of Winter Haven's, Motion to Dismiss the amended complaint (Dkt.28); and Plaintiffs, Brock and Marie Gainer's, Memorandum in opposition to Defendant's Motion to Dismiss (Dkt.31).

### FACTUAL BACKGROUND

The following "facts" are taken as true for purposes of the pending motion: Plaintiffs both reside within Polk County, Florida, and were both employed by Defendant. (Dkt.23). Plaintiff, Brock Gainer, worked for Defendant within its Department of Leisure Services and held the title of Ground Maintenance Supervisor. (Dkt.23). Plaintiff, Brock Gainer, began his employment with Defendant on or about October 12, 1987, and was terminated from employment by Defendant on May 3, 2000. (Dkt.23). Plaintiff, Marie Gainer, worked for Defendant within its Department of Leisure Services and held the title of Assistant to the Director. (Dkt.23). Plaintiff, Marie Gainer, began her employment with Defendant on or about October 6, 1975, and was terminated from employment by Defendant on May 3, 2000. (Dkt.23). R. Carl Cheatham (Cheatham) was employed by Defendant and held the appointed position of City Manager. (Dkt.23). Robert G. Sheffield (Sheffield) was employed by Defendant and held the position of Director of Defendant's Leisure Services Department. (Dkt.23). This is an action arising under the First and Fourteenth Amendments to the United States Constitution, brought pursuant to 42 U.S.C. § 1983. (Dkt.23).

Plaintiffs claim that, at all times during their respective employment careers with Defendant, Plaintiffs performed their duties in a competent and exemplary fashion and also received very good performance evaluations and corresponding pay raises. (Dkt.23). Plaintiffs claim that all of the conduct complained of was commit-

ted under color of the laws of the State of Florida. (Dkt.23).

On November 17, 1999, Defendant suspended Plaintiffs, with pay, pending an investigation into Plaintiffs' alleged violation of Defendant's employment policies. (Dkt. 23, exhibits E and F). Defendant commenced an investigation into the Plaintiffs' possible misconduct. (Dkt. 23, exhibits G and H). Sheffield sent letters to Plaintiffs individually, on January 31, 2000, informing Plaintiffs that they were being suspended without pay pending final resolution of the alleged violations of Defendant's policies. (Dkt. 23, exhibits G and H).

Plaintiffs were each given an opportunity to respond to Defendant's letters and the charges asserted. (Dkt.23). Plaintiffs each individually responded to Defendant's allegations by letter on February 9, 2000. (Dkt. 23, exhibits I and J). As a result, Plaintiffs each received letters from Sheffield dated February 11, 2000, on behalf of Defendant, reiterating the continuation of their suspensions without pay and also stating that Sheffield was recommending that Plaintiffs be terminated from employment with Defendant and that Plaintiffs would be afforded a due process hearing after Defendant issued a formal complaint against Plaintiffs. (Dkt. 23, exhibits K and L).

On March 3, 2000, Sheffield sent individual formal complaints to Plaintiffs setting forth, with particularity, the policies that Plaintiffs respectively violated, and also stating that Plaintiffs were being recommended for termination pending Cheatham's final decision at the due process hearing. (Dkt.23). The due process hearing was conducted over nine days from March 30, 2000, through April 26, 2000. (Dkt.23). Plaintiffs were both terminated from employment with Defendant on May 3, 2000. (Dkt.23).

Plaintiffs allege that they were maliciously terminated by Defendant with retaliatory motive or intent and/or with reckless or careless indifference toward both plaintiffs' legal and constitutional rights to free speech. (Dkt.23, ¶ 77). Plaintiffs allege numerous reason for their malicious termination, including that:

(1) It was widely known within the Department of Leisure Services that Sheffield had two favorite employees, Travis Edwards (Edwards) and Gene Mathews (Mathews), who he allowed excessive overtime, extended lunch periods—despite one of the employees being an hourly employee, allowing these two employees additional perks and benefits associated with working for the Cleveland Indians during spring training, and not imposing discipline upon Edwards and Mathews for policy violations while holding other employees to a different standard. (Dkt.23, ¶ 24).

(2) During the due process hearing:

 a. Debbie Edwards testified to typing Sheffield's son's homework and seeing Sheffield's son riding in a city vehicle;

 b. Mathews admitted that Mathews, Edwards, and Sheffield worked on Sheffield's boat during city work hours;

 c. Numerous employees admitted Mathew and Edwards received a large amount of overtime compensation during times when the Department of Leisure Services was over budget;

 d. Gordon Ostlund admitted that he used city equipment at his home without being disciplined;

 e. Evidence was presented that Michelle Stayner's brother, Mike Hurd, was given Brock Gainer's

duties and a pay raise after Brock Gainer was suspended and terminated;

f. Brock Gainer testified, as did Don Merkley and George Hammond, two other city employees, that Sheffield put city owned gas in his personal vehicle and personal boat, and that Sheffield allowed his underage son to drive a city vehicle;

g. Brock and Marie Gainer revealed double standards and abuses within the department;

h. Marie Gainer testified that she prepared some of her husband's weekly reports during her lunch or break times; and

i. Marie Gainer testified that she had never been supplied any directives concerning the rental and fee policies for city facility use, nor was she informed of any violation of any established rate schedule. (Dkt.23, ¶ 58).

(3) Plaintiffs were never informed of the charges made by the city or given specific examples of violations until January 31, 2000, when Plaintiffs were notified they were being suspended without pay; (Dkt.23).

(4) Plaintiffs were not given prior notice of their suspensions with pay, and were also not provided reasons, or explanations, for Defendant's decision to suspend their employment; (Dkt.23).

(5) Plaintiffs were never given written reprimands, nor were Plaintiffs asked to sign any acknowledgement of perceived wrongdoing prior to their respective suspensions with pay on November 17, 1999; (Dkt.23).

(6) Sheffield sought to terminate Plaintiffs' employment immediately after Sheffield had been reprimanded for the illegal storage of his boat on Defendant's property; (Dkt.23).

(7) Cheatham not only ratified Sheffield's unlawful motives, but also had his own unlawful motives in seeking the termination of Plaintiffs; namely, based upon the embarrassing news stories and evidence of widespread favoritism and misuse of taxpayer funds, which were later revealed during the due process hearing; (Dkt.23, ¶ 47).

(8) Prior to the due process hearing, Sheffield distributed copies of the formal allegations against Plaintiffs to other employees within the Department of Leisure Services; (Dkt.23).

(9) There was a pattern of abuses by Defendant, within the Department of Leisure Services; (Dkt.23).

(10) Defendant's reason for terminating Plaintiffs employment was false and not supported by competent or substantial evidence; (Dkt.23).

(11) The due process hearing was a sham, and the decision to terminate Plaintiffs had already been made prior to the due process hearing; and (Dkt.23).

(12) Defendant's false reasons for Plaintiffs' terminations were a pretext for the real reason: to silence and retaliate against Plaintiffs, and to deprive them of their constitutionally protected right to free speech and procedural due process. (Dkt.23).

Defendant in turn alleges that as a result of a pattern and practice of Plaintiffs' continuous violations of Defendant's policies, Plaintiffs were terminated for cause. In support of this contention, Defendant argues that:

(1) Plaintiff, Brock Gainer, violated the following policies and procedures:

a. § 2.01(B) and (E), Standards of Conduct;

b. § 2.12, Use of City Property;

c. § 4.15(D)(8), Discourtesy to person while in performance of duties;

d. § 4.15(D)(16), Failure to comply with departmental rules or standards of conduct;

e. § 4.19(3), Threatening, intimidating, coercing, or interfering with fellow employees or supervisors, including use of abusive language.

f. § 4.19(9), Unauthorized modifications of time sheets; and

g. § 4.19(10), Insubordination or refusal to comply with instructions of a supervisor. (Dkt. 23, exhibit O).

(2) Plaintiff, Marie Gainer, violated the following policies and procedures:

a. § 2.01(B) and (E), Standards of conduct;

b. § 2.12, Use of City Property;

c. § 4.15(D)(2), Leaving assigned work area during working hours without permission;

d. § 4.15(D)(4), Productivity or workmanship not up to required standards;

e. § 4.15(D)(8), Discourtesy to person while in performance of duties;

f. § 4.15(D)(16), Failure to comply with departmental rules or standards of conduct;

g. § 4.19(3), Threatening, intimidating, coercing, or interfering with fellow employees or supervisors, including use of abusive language.

h. § 4.19(8), Wanton or willful neglect in the performance of assigned duties;

i. § 4.19(9), Unauthorized modifications of time sheets; and

j. § 4.19(10), Insubordination or refusal to comply with instructions of a supervisor. (Dkt. 23, exhibit P).

Plaintiffs claim that Defendant violated Plaintiffs' right to free speech in direct retaliation because Plaintiffs publicly revealed, during the due process hearing, double standards, embarrassing evidence of favoritism, and departmental abuses Cheatham allowed to exist. (Dkt.23). Plaintiffs make these claims based on the First and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983. (Dkt.23). Plaintiffs contend that the subject of Plaintiffs' speech concerned matters of public concern and therefore was protected by the United States Constitution as a matter of law, and that no legitimate governmental interest or purpose was served by the denial of Plaintiffs' First Amendment rights. (Dkt.23). Plaintiffs also allege that Defendant's proffered reasons for Plaintiffs' terminations were merely a pretext, and the real reason for Plaintiffs' terminations was to suppress their free speech and to retaliate against them for making such speech. (Dkt.23).

## JURISDICTION

This Court has jurisdiction over the First and Fourteenth Amendment claims pursuant to 28 U.S.C. §§ 1331 and 1343.

## STANDARD OF REVIEW

A district court should not dismiss a complaint unless it appears, "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). To survive a motion to dismiss, a plaintiff may not merely "label" his or her claims. *See Blumel v. Mylander,* 919 F.Supp. 423, 425 (M.D.Fla.1996). At a minimum, the Federal Rules of Civil Procedure require a "short and plaint statement of the claim" that "will give the

defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *See Conley,* 355 U.S. at 47, 78 S.Ct. 99 (quoting Fed.R.Civ.P. 8(a)(2)).

In deciding a motion to dismiss, the court may only examine the four corners of the complaint. *See Rickman v. Precisionaire, Inc.,* 902 F.Supp. 232, 233 (M.D.Fla.1995). "The threshold sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low." *Ancata v. Prison Health Serv., Inc.,* 769 F.2d 700, 703 (11th Cir.1985) (citation omitted).

In addition, a court must accept the plaintiff's well-pled facts as true and construe the complaint in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Howry v. Nisus, Inc.,* 910 F.Supp. 576 (M.D.Fla.1995). However, when on the basis of a dispositive issue of law, no construction of the factual allegations of the complaint will support the cause of action, dismissal of the complaint is appropriate. *See Executive 100, Inc. v. Martin County,* 922 F.2d 1536 (11th Cir. 1991).

## DISCUSSION

### I. First Amendment Prima Facie Case

 To establish a valid First Amendment claim, this Court has held that four elements must be met: (1) whether the employee's speech involves a matter of public concern; (2) whether the employee's interest in speaking outweighs the government's legitimate interests in efficient public service; (3) whether the speech played a substantial part in the government's challenged employment decision; and (4) whether the government would have made the same employment decision in the absence of the protected conduct. *Arenal v. Punta Gorda,* 932 F.Supp. 1406, 1411 (M.D.Fla.1996). In order to determine whether speech satisfies the "public con-

cern" requirement, the Court must "analyze its 'content, form and context ... as revealed by the whole record,' and evaluate whether [Plaintiffs'] purpose was 'to raise issues of public concern, on the one hand, or to further [Plaintiffs'] own private interest[s], on the other.' " *Gonzalez v. Lee County Housing Authority,* 161 F.3d 1290, 1296–97 (11th Cir.1998).

### A. Brock Gainer

In the instant case, there are many allegations made by the Plaintiffs of wrongdoing by the Defendant. However, under a First Amendment retaliation claim, the focus must remain on the employee's speech, as alleged in the amended complaint, whether the speech at issue is a matter of public concern, whether the speech alleged played a substantial part in the government's challenged employment decision, and whether the government would have made the same employment decision in the absence of the protected conduct.

 The speech alleged in the amended complaint, is Brock Gainer's testimony at the due process hearing. Specifically, he testified, along with two other city employees, that Sheffield put city gas into his personal vehicle and his personal boat. Brock also testified, along with the two other city employees, that Sheffield allowed his underage son to drive a city vehicle. These two statements made by Brock Gainer do raise issues of public concern. If proven, these statements provide the basis for the employee of the city's misuse of taxpayer money. Therefore, the first two elements are met.

It is the opinion of this Court however, that this speech did not play a substantial part in the government's challenged employment decision. Since two other city employees also made the same statements and were not terminated from employ-

ment, it cannot be said that this protected speech was the cause of termination. Since the third element has not been met, the fourth element will not be discussed in the context of this speech.

### B. Marie Gainer

■ Again, under a First Amendment retaliation claim, the focus must be on the employee's speech. Marie Gainer's speech alleged in the amended complaint consists of testimony admitting that she prepared some of her husband's weekly reports during her lunch or break times, as well as testimony that she had never been supplied with the city's rental and fee policies for city facilities. Both of these statements clearly reflect substance specific to Marie Gainer's job with the city. Neither statement is a matter of public concern as they are not advocating a violation of any law, or a misuse of city resources, nor do they represent a discriminatory policy. The additional elements of a First Amendment retaliation claim will not be discussed, as the first element has not been met.

Both Plaintiffs allege that in defending themselves during the due process hearing they revealed the double standards, abuses within the department, and embarrassing evidence of favoritism and disparate treatment within the city's Department of Leisure Services by Sheffield and Cheatham. (Dkt. 23, ¶¶ 59 and 69). While this claim suggests that Marie and Brock Gainer actually spoke the words during this due process hearing, there is no mention, anywhere in the amended complaint, that Brock or Marie Gainer said anything other than what is mentioned above. This statement cannot withstand the scrutiny of Rule 8 of the Federal Rules of Civil Procedure with respect to a § 1983 claim. The Eleventh Circuit "has tightened the application of Rule 8 with respect to § 1983

cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim." *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir.1998). Six months later, the Supreme Court ruled that "the plaintiff does not have to satisfy any heightened pleading requirement, and may rely on circumstantial as well as direct evidence." *Crawford–El v. Britton*, 523 U.S. 574, 582, 118 S.Ct. 1584, 1589, 140 L.Ed.2d 759, 769. However, this Supreme Court determination is discussed in the context of the government official's motive and allowing circumstantial evidence, as opposed to direct evidence, when pleading that an official had an unconstitutional motive. The issue at hand is whether there are sufficient pleadings that show that any protected speech actually occurred. This Court believes that if the Defendant acted improperly, it was not with respect to a First Amendment issue of retaliation. There may be other charges to be brought, however, these are far from the First Amendment issues of this case and are not before this court.

■ Furthermore, the speech in question arises from a due process hearing to determine whether Plaintiffs would keep their jobs. According to *Connick v. Myers*, "[i]f the relevant speech was motivated by personal concerns instead of public concerns then it is not protected by the First Amendment in this context." 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690–91, 75 L.Ed.2d 708 (1983). The due process hearing's purpose was of a personal nature, therefore the speech at issue was motivated by a private, personal concern, trying to keep jobs, and cannot be protected by the First Amendment.

■ The Plaintiffs contend that with no "trigger" incident occurring between the embarrassing news story and the rep-

rimand Sheffield received that it can be inferred that Sheffield had an unlawful and retaliatory motive for terminating the Plaintiffs. While this Court may agree with this statement, this argument refers to an anonymous tip to the media about Sheffield's boat. Nowhere is it alleged that Marie or Brock Gainer made these statements and it is actually denied that they made these statements. As stated in this Court's order on November 8th, 2000, First Amendment protection is not afforded to statements that are not made. Furthermore, the protected speech that is alleged in the amended complaint is that speech made by the Plaintiffs at the due process hearing, four to five months after the embarrassing news story and Sheffield's reprimand, rather than three weeks as the Plaintiffs claim.

### C. Municipality Liability

■ The Eleventh Circuit has held that a municipality may be held liable, under 42 U.S.C. § 1983, for a single illegal act that is committed by one of its officers; however, the municipality officers cannot be held liable on a theory of respondeat superior. *See Scala v. City of Winter Park,* 116 F.3d 1396, 1399 (11th Cir.1997) (citing *Monell v. Department of Social Services,* 436 U.S. 658, 693–4, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978)). Instead, § 1983 liability may be premised upon a single illegal act by a municipal officer only when the challenged act may fairly be said to represent official policy, such as when that municipal officer possesses final policy-making authority over the relevant subject matter. *See id.*

■ In the instant case, Plaintiffs allege that Cheatham not only ratified Sheffield's unlawful motives, but also had his own unlawful motives in seeking the termination of Plaintiffs. If, as has been established above, there is no single illegal act, then the municipality cannot be held liable

for actions of its officers. Since there is no First Amendment violation, there cannot be liability on the part of the Defendant.

### II. Procedural Due Process Claim

■ Plaintiffs claim that Defendant deprived Plaintiffs of their procedural due process rights, as guaranteed by the Fourteenth Amendment to the United States Constitution. This claim is brought by Plaintiffs under 42 U.S.C. § 1983. Plaintiffs allege that they have been deprived of their property interest in continued employment with Defendant, without procedural due process of law, and that no effective remedy exists at law.

In *McKinney,* the court considered the question of whether a procedural due process violation would lie in the employment case before the court. *McKinney v. Pate,* 20 F.3d 1550 (11th Cir.1994). The Eleventh Circuit concluded that Florida law provides, through certiorari review by Florida courts, an adequate means for review of quasi-judicial employment termination. *See id.* at 1563–64. Therefore, even if allegations regarding procedural defects at the administrative level, brought by a public employee of Florida, were true, Florida's certiorari procedures satisfy a plaintiff's due process rights, and "alleviate any deprivation" the employee may have suffered. *See id.* at 1564.

In addition, as this Court has previously recognized, even in this matter, the inability of Plaintiffs to allege that the State of Florida has refused to make available a means through which to remedy Plaintiffs' alleged deprivation is fatal to Plaintiffs' Federal due process claim. *See Henniger v. Pinellas County,* 7 F.Supp.2d 1334, 1338 (M.D.Fla.1998); *see also Horton v. Board of County Commissioners of Flagler County,* 202 F.3d 1297, 1301 (11th Cir. 2000); *Flint Electric Membership Corp. v. Whitworth,* 68 F.3d 1309, 1313 (11th Cir. 1995), *on rehearing* 77 F.3d 1321 (11th

Cir.1996); *Stewart v. Town of Zolfo Springs*, 1997 WL 689448, *2 (M.D.Fla. 1997). Furthermore, the Eleventh Circuit has made it patently clear that, for the reasons discussed in McKinney, district courts lack subject matter jurisdiction over these kinds of alleged federal due process violations by a municipality in Florida, because Florida gives aggrieved persons [the right to repair to the Florida circuit court]. *Boatman v. Town of Oakland*, 76 F.3d 341, 346 (11th Cir.1996).

Plaintiffs' procedural due process claim is once again dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

This Court having considered all the arguments of the parties as set forth and alleged in the aforementioned documents is convinced that the motion to dismiss be granted with prejudice. Accordingly it is

**ORDERED** that Defendant's Motion to Dismiss (Dkt.28) the amended complaint be **granted with prejudice** and the Clerk of Court is **directed** to enter judgment for the Defendant.