[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

―――――――――

No. 95-4117

―――――――――

D. C. Docket No. 91-8739-CIV-JCP

GARY GATTIS,

Plaintiff-Appellant,

versus

HERMAN BRICE, individually and in his official capacity
as Fire Chief of Palm Beach County Fire Rescue, PALM BEACH
COUNTY, FLORIDA, a local governmental agency, MICHAEL IACONA,
individually and in his official capacity as Deputy Chief of Palm Beach
County Fire Rescue, LARRY KOESTER, individually and in his
official capacity as Deputy Chief of Palm Beach County Fire Rescue,
ROBERT WEISMAN, in his official capacity as County Administrator
for Palm Beach County,

Defendants-Appellees.

―――――――――

Appeal from the United States District Court
for the Southern District of Florida

―――――――――

**(March 3, 1998)**

―――――――――――――――――――――

Before TJOFLAT, Circuit Judge, and RONEY and PHILLIPS*, Senior Circuit Judges.

―――――――――――――――――――――――――――――――――――――

*Honorable J. Dickson Phillips, Jr., Senior U.S. Circuit Judge for the Fourth Circuit, sitting by
designation.

TJOFLAT, Circuit Judge:

In this case, an employee of the Palm Beach County Fire Department, appellant Gary Gattis, claims that he was demoted within the department because he exercised his First Amendment right of free speech. Gattis expressed his views on two issues: one concerned the department's proposed alterations to the county's fire code; the other concerned the department's equipment procurement policies. Gattis has sued the county, the county administrator, and in the order of descending supervisory authority in the department, Fire Administrator Herman Brice and Deputy Chiefs Michael Iacona and Larry Koester. Proceeding under 42 U.S.C. § 1983 (1994), Gattis seeks an injunction restoring him to his former position,[1] and money damages against the county and each individual defendant in the defendant's official capacity. Gattis also seeks damages against Brice, Iacona, and Koester in their individual capacities.

After the pleadings closed, the district court granted the defendants summary judgment. Gattis now appeals, presenting one issue: whether Brice demoted Gattis pursuant to a county policy, established by Brice in his capacity as fire administrator, which called for Gattis' demotion in retaliation for his engaging in the above speech.[2] We find no evidence in the record

---

[1] Gattis' amended complaint seeks an injunction but does not indicate the relief the injunction should provide. We assume that relief is the restoration of Gattis' former position of Battalion Chief.

[2] Gattis specifically appeals the district court's ruling that Administrator Brice is not a county "policymaker." A local government can only be held liable under § 1983 if a municipal "policy" or "custom" exists pursuant to which that government violated a plaintiff's constitutional rights. See Monell v. Department of Social Servs. of New York, 436 U.S. 658, 690-94, 98 S.Ct. 2035-38, 56 L.Ed.2d 611 (1978); McMillian v. Monroe County, Ala., -- U.S. --, 117 S.Ct. 1734, 1735-36, 138 L.Ed.2d 1 (1997) (applying Monell's principles to a suit against a county). If a county official holds final policymaking authority for the county in the subject area of the alleged constitutional violation, that official's decisions may constitute county policy. See

that would permit a jury to conclude that Brice established such a policy for the county and that

he demoted Gattis in pursuance thereof.  We therefore affirm.

I.

The salient facts are these.  In 1991, the Palm Beach County Fire Department was

arranged in the following descending hierarchy: Fire Administrator, Division Chiefs, Deputy

Chiefs, Battalion Chiefs, District Chiefs, and Captains.  Fire Administrator Brice reported to the

county administrator, who in turn reported to the board of commissioners for Palm Beach

County.  In the fall of 1991, Administrator Brice, in anticipation of a report from the Office of

Finance, Management, and Budget finding that the fire department had too many senior officers,

reorganized the department to keep it within budgetary constraints.  As a result of this

reorganization, the department eliminated eleven positions: one deputy chief, two division chief,

three battalion chief, and five district chief positions.  Personnel holding the eliminated positions

were generally demoted to the next tier of management.

To determine which battalion chiefs would be demoted to district chief positions, Chief

---

Pembaur v. City of Cincinnati, 475 U.S. 469, 480-83, 106 S.Ct. 1292, 1299-1300, 89 L.Ed.2d
452 (1986) (establishing principle for a municipality); McMillian v. Johnson, 88 F.3d 1573,
1577 (11th Cir. 1996), aff'd sub nom McMillian v. Monroe County, Ala., -- U.S. --, 117 S.Ct.
1734, 138 L.Ed.2d 1 (1997) (applying Pembaur's principles in a suit against the county); Mandel
v. Doe, 888 F.2d 783, 792-93 (11th Cir. 1989) (stating that liability may attach for decisions of
county officials who "possess[] the authority and responsibility for establishing final policy with
respect to the issue in question").  We assume that Administrator Brice is a policymaker for Palm
Beach County.  This assumption, however, does not affect the outcome of the case.

Brice asked Deputy Chiefs Koester, Iacona, and Sweat[3] to recommend for reassignment three of the battalion chiefs under their supervision. The deputy chiefs developed an objective evaluation form, upon which they rated each battalion chief numerically in five areas: Leadership, Teamwork, Organizational Skills, Knowledge and Experience, and Accountability. They then forwarded the names of the three lowest-rated battalion chiefs to Administrator Brice, who adopted the deputy chiefs' recommendation and demoted those individuals. Gattis was one of the three lowest-rated battalion chiefs and was thus demoted to a district chief position.

Gattis contends that Brice demoted him because: (1) he opposed the department's policy favoring two fire codes -- one for the rural portions of the county, and the other for the more densely populated urban areas -- and argued that the county should have only one code; and (2) he opposed the department's equipment procurement policies. We disagree.

II.

To succeed in a section 1983 suit based on a claim of retaliation for speech, the plaintiff must show that his speech was a "substantial" or "motivating" factor in the allegedly retaliatory decision. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); Bryson v. City of Waycross, 888 F.2d 1562, 1565-66 (11th Cir. 1989) (establishing four-part test that requires plaintiff to prove speech in question was a substantial or motivating factor behind plaintiff's injury). The question of whether the plaintiff has established this element is one for the fact-finder. Id. To survive summary judgment, Gattis

_____

[3] Chief Sweat is not a defendant in this suit.

must therefore make a showing sufficient to permit a reasonable jury to find that his protected speech was a substantial or motivating factor behind his demotion. He has not done so.

Gattis claims that the record permits the inference that his speech was a factor in Administrator Brice's decision.[4] We assume for purposes of this appeal that Gattis' speech was entirely protected. Administrator Brice's decision to demote Gattis, however, had nothing to do with that speech. The decision Brice made was to adopt the recommendation of his deputy chiefs. There is nothing in the record to suggest that Brice's mere acceptance of the list of three poorly-rated battalion chiefs was in any way retaliatory. Brice did not generate the list. He did not himself evaluate Gattis and the other two individuals recommended for reassignment. He simply made a decision to rely on the experience and judgment of Chiefs Koester, Iacona, and Sweat as to which three battalion chiefs were doing the worst job in the Fire Department.

Gattis argues that the low marks he received from Chiefs Iacona and Koester were themselves retaliation for his speech. Even though the evaluation forms contain nothing to suggest such retaliation, Gattis claims that the deputy chiefs harbored retaliatory motives that rendered Administrator Brice's adoption of the chiefs' recommendation retaliatory as well. There is very little to support a claim that Chiefs Iacona and Koester acted upon any "hidden" motives when they filled out their evaluation forms. Even if the deputy chiefs did have improper motives, however, those motives do not render Brice's decision an unconstitutional county policy.

A policymaker's approval of an unconstitutional action can constitute unconstitutional

---

[4] The record contains no direct evidence that Brice demoted Gattis on account of his speech; the question thus becomes whether the record permits the inference that speech played a role in Brice's decision.

county policy only when the policymaker "approve[s] a subordinate's decision *and the basis for it*." City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988) (emphasis added). Gattis must therefore present evidence that Administrator Brice not only accepted the recommendation of his deputy chiefs, but knew of and ratified the improper motives behind their recommendation. See Hill v. Clifton, 74 F.3d 1150, 1152 (1996). There is nothing in the record that suggests Chief Brice was aware of any such motives on the part of Chiefs Koester and Iacona. As mentioned *supra*, the evaluations themselves contain nothing retaliatory, and there is nothing to suggest that Brice learned of improper motives from other sources. Brice's adoption of the deputy chiefs' recommendation therefore cannot constitute unconstitutional county policy even if the chiefs did act upon retaliatory motives in making their evaluations.[5]

## III.

Gattis has presented nothing that would convince a reasonable jury that his speech was a substantial or motivating factor in his demotion. His claim therefore cannot survive summary judgment, and the decision of the district court is

AFFIRMED

---

[5] Gattis argues in the alternative that the county administrator, Robert Weisman, is a policymaker for Palm Beach County, and that Weisman rendered the County liable by ratifying Brice's decision to demote Gattis. As discussed *supra*, liability cannot attach to the County because of Brice's decision; therefore, any ratification of that decision is harmless.