R. Brock GAINER and Marie
F. Gainer, Plaintiffs,

v.

CITY OF WINTER HAVEN,
FLORIDA, Defendant.

No. 8:00–CV–1098–T–17A.

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 8, 2000.

1296

Thomas J. Pilacek, Thomas J. Pilacek & Associates, Maitland, FL, for Plaintiffs.

Robert Joseph Antonello, Law Office of Robert J. Antonello, Winter Haven, FL, Donald T. Ryce, Hogg, Ryce & Hudson, Miami Beach, FL, for Defendant.

## ORDER ON MOTION TO STRIKE AND ON MOTION TO DISMISS

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant, City of Winter Haven's, Motion to Strike portions of Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss, (Dkt.14), Plaintiffs, R. Brock Gainer and Marie F. Gainer's, response thereto, (Dkt.17), Defendant's Motion to Dismiss, (Dkt.3), and Plaintiffs' response thereto, (Dkt.11).

I. *Factual Background*

Plaintiffs both reside within Polk County, Florida, and were both employed by Defendant. (Dkts.1, 7). Plaintiff, Brock Gainer, worked for Defendant within its Department of Leisure Services, and held the title of Ground Maintenance Supervi-

sor. (Dkts.1, 7). Plaintiff, Brock Gainer, began his employment with Defendant on, or about, October 12, 1987, and was terminated from employment by Defendant on May 3, 2000. (Dkts.1, 7). Plaintiff, Marie Gainer, worked for Defendant within its Department of Leisure Services, and held the title of Assistant to the Director. (Dkts.1, 7). Plaintiff, Marie Gainer, began her employment with Defendant on, or about, October 6, 1975, and was terminated from employment by Defendant on May 3, 2000. (Dkts.1, 7). R. Carl Cheatham [hereinafter Cheatham] was employed by Defendant and held the appointed position of City Manager. (Dkts.1, 7). Robert G. Sheffield [hereinafter Sheffield] was employed by Defendant and held the position of Director of Defendant's Leisure Services ˙Department. (Dkts.1, 7). Both Cheatham and Sheffield were initially named as parties in this action; however, this Court entered an order granting the dismissal of Cheatham and Sheffield, (Dkt.10), as named Defendants. (Dkt.12). This is an action arising under the First and Fourteenth Amendments to the United States Constitution, brought pursuant to 42 U.S.C. § 1983, as well as a Petition Seeking Issuance of a Writ of Certiorari under Rule 9.100 of the Florida Rules of Appellate Procedure. (Dkt.1).

Plaintiffs claim that, at all times during their respective employment careers with Defendant, Plaintiffs performed their duties in a competent and exemplary fashion, and also received very good performance evaluations and corresponding pay raises. (Dkt.1). Defendant denies these claims. (Dkt.7). Plaintiffs claim that all of the conduct complained of was committed under color of the laws of the State of Florida. (Dkt.1).

Plaintiffs were suspended with pay by Defendant on November 17, 1999, pending an investigation into Plaintiffs' alleged violations of Defendant's employment policies. (Dkt. 1, exhibits E and F). Defendant commenced an investigation into the possible misconduct committed by both Plaintiffs. (Dkt. 1, exhibits G and H). Sheffield sent letters to Plaintiffs individually, on January 31, 2000, informing Plaintiffs that they were being suspended without pay, pending final resolution of the alleged violations of Defendant's policies. (Dkt. 1, exhibits G and H).

Plaintiffs were each given an opportunity to respond to Defendant's letters, with respect to the charges asserted. Plaintiffs each individually responded to Defendant's allegations by letter, on February 9, 2000. (Dkt. 1, exhibits I and J). As a result, Plaintiffs each received letters from Sheffield, dated February 11, 2000, on behalf of Defendant, reiterating the continuation of their suspensions without pay, and also stating that Sheffield was recommending that Plaintiffs be terminated from employment with Defendant, and that Plaintiffs would be afforded a due process hearing after Defendant issued a formal complaint against Plaintiffs. (Dkt. 1, exhibits K and L).

Sheffield sent formal complaints to Plaintiffs, individually, on March 3, 2000, setting forth, with particularity, the policies that Plaintiffs respectively violated, and also stating that Plaintiffs were being recommended for termination pending the final decision of Cheatham, City Manager, at the due process hearing. (Dkt. 1, exhibits M and N). A due process hearing was conducted over the span of nine (9) days from March 30, 2000, through April 26, 2000. (Dkt.1). Plaintiffs were both terminated from employment with Defendant on May 3, 2000. (Dkt. 1, exhibits O and P).

Plaintiffs allege that they were involuntarily terminated by Defendant. (Dkt.1).

Plaintiffs allege numerous reasons for their involuntary termination, including that:

(1) Sheffield had a mysterious dislike of Plaintiff, Brock Gainer;

(2) Sheffield was frequently absent from his office and designated that Plaintiff, Marie Gainer, be in charge of the Leisure Services Department, despite Plaintiff, Marie Gainer's, insistence that she did not want to be used as an intermediary for directives given from Sheffield to Plaintiff, Brock Gainer, because she was aware of Defendant's nepotism policy;

(3) Sheffield insisted on continuing to send messages, memoranda, and other directives directed at Plaintiff, Brock Gainer, to Plaintiff, Marie Gainer;

(4) Sheffield harbored animosity towards Plaintiff, Brock Gainer;

(5) Sheffield showed favoritism to other employees;

(6) Sheffield made promises to Plaintiffs and never fulfilled them;

(7) Plaintiff, Marie Gainer, assisted with Plaintiff, Brock Gainer's, weekly reports for his crew, and that another employee also handled the payroll issues for her husband without any repercussions;

(8) Defendant's attorney never took affirmative steps to meet with Plaintiffs to address the alleged concerns that Defendant had with Plaintiffs' job performance;

(9) Plaintiffs were never informed of the charges or given specific · examples of violations until January 31, 2000, when Plaintiffs were notified they were being suspended without pay;

(10) Plaintiffs were never given written reprimands, nor were Plaintiffs asked to sign any acknowledgement of perceived wrongdoing prior to their respective suspensions with pay on November 17, 1999;

(11) Plaintiff, Marie Gainer, was not aware that Plaintiff, Brock Gainer, used Defendant's vehicle for personal use, in violation of Cheatham's order that the vehicle only be used at work;

(12) Sheffield falsely presumed that Plaintiffs were the source of the information provided to the news media, regarding his illegal storage of his personal boat on Defendant's property, an action for which Sheffield received a written reprimand;

(13) Sheffield told Plaintiff, Brock Gainer, that he would not be disciplined, even though Plaintiff's crew was not properly recording their time on their time cards;

(14) Plaintiffs were not given prior notice of their suspensions with pay, and were also not provided reasons, or explanations, for Defendant's decision to suspend their employment;

(15) Sheffield sought to terminate Plaintiffs' employment immediately after Sheffield had been reprimanded for the illegal storage of his boat on Defendant's property;

(16) Plaintiffs were only given seven (7) days to respond to the charges in the letters dated January 31, 2000;

(17) Prior to the due process hearing, Sheffield distributed copies of the formal allegations against Plaintiffs to other employees within the Department of Leisure Services;

(18) Cheatham, who made the final decision as to Plaintiffs' terminations during the due process hearing, was prejudiced against Plaintiffs, and upheld Sheffield's

recommendations as to their terminations because Cheatham hired Sheffield;

(19) There was a pattern of abuses by Defendant, within the Department of Leisure Services;

(20) Defendant's reasons for terminating Plaintiffs' employment were false and not supported by competent or substantial evidence;

(21) The due process hearing was a sham, and the decision to terminate Plaintiffs had already been made prior to the due process hearing; and

(22) Defendant's false reasons for Plaintiffs' terminations were a pretext for the real reason to silence and retaliate against Plaintiffs, and to deprive them of their constitutionally protected right to free speech and procedural due process. (Dkt.1).

Defendant, in turn, alleges that, as a result of a pattern and practice of Plaintiffs' continuous violations of Defendant's policies, Plaintiffs were terminated for cause. (Dkt. 1, exhibits O and P). In support of this contention, Defendant argues that:

(1) Plaintiff, Brock Gainer, violated the following policies and procedures:

(a) § 2.01(B) and (E), Standards of Conduct;

(b) § 2.12, Use of City Property;

(c) § 4.15(D)(8), discourtesy to persons while in performance of duties;

(d) § 4.15(D)(16), failure to comply with departmental rules or standards of conduct;

(e) § 4.19(3), threatening, intimidating, coercing, or interfering with fellow employees or supervisors, including use of abusive language.

(f) § 4.19(9), unauthorized modification of time sheets; and

(g) § 4.19(10), insubordination or refusal to comply with instructions of a supervisor. (Dkt. 1, exhibit O).

(2) Plaintiff, Marie Gainer, violated the following policies and procedures:

(a) § 2.01(B) and (E), Standards of Conduct;

(b) § 2.12, Use of City Property;

(c) § 4.15(D)(2), leaving assigned work area during working hours without permission;

(d) § 4.15(D)(4), productivity or workmanship not up to required standards;

(e) § 4.15(D)(8), discourtesy to persons while in performance of duties;

(f) § 4.15(D)(16), failure to comply with departmental rules or standards of conduct;

(g) § 4.19(3), threatening, intimidating, coercing, or interfering with fellow employees or supervisors, including use of abusive language;

(h) § 4.19(8), wanton or willful neglect in the performance of assigned duties;

(i) § 4.19(9), unauthorized modifications of time sheets; and

(j) § 4.19(10), insubordination or refusal to comply with the instructions of a supervisor. (Dkt. 1, exhibit P).

In Count I, Plaintiffs claim that Defendant deprived Plaintiffs of their procedural due process rights, as guaranteed by the Fourteenth Amendment to the United States Constitution. (Dkt.1). This claim is brought by Plaintiffs under 42 U.S.C. § 1983. (Dkt.1). Plaintiffs allege that they were denied their constitutional right to procedural due process by: (a) being de-

nied the opportunity to be promptly advised of the charges against Plaintiffs; (b) being suspended without identification of the charges against Plaintiffs; (c) Sheffield, on behalf of Defendant, distributing copies of the allegations against Plaintiffs to other employees within the Department of Leisure Services, as a means to smear the character and reputations of Plaintiffs, as well as to taint the due process hearing; (d) denying Plaintiffs an effective opportunity to prepare and defend the allegations against Plaintiffs; (e) the unrebutted testimony of employees of Defendant being intimidated and questioned by Defendant in a threatening manner during the investigation into the charges against Plaintiffs; and (f) the due process hearing not being in front of an unbiased decision-maker. (Dkt.1). As a result, Plaintiffs allege that Plaintiffs have been deprived of their property interest in continued employment with Defendant without procedural due process of law, and that no effective remedy exists at law. (Dkt.1).

In Count II, Plaintiffs allege that Defendant deprived Plaintiffs of their right to freedom of speech as protected by the First and Fourteenth Amendments to the United States Constitution. (Dkt.1). This claim is also brought under 42 U.S.C. § 1983. (Dkt.1). Plaintiffs allege that Defendant violated Plaintiffs right to free speech in direct retaliation for Plaintiffs speaking the truth on the following matters: (a) the favoritism that Sheffield exhibited for other employees of Defendant; (b) the abuses which were allowed to exist within the Department of Leisure Services of Defendant; (c) for exposing the audit of the Aquatics Department in 1994 and the police investigation into Sheffield's activities in 1996; and (d) to retaliate against Plaintiffs for Sheffield's erroneous belief that Plaintiffs were the source of the news story in 1999, which lead to an embarrassing news story and reprimand of Sheffield over the storage of Sheffield's personal boat on Defendant's property. (Dkt.1). Plaintiffs contend that the subject of Plaintiffs' speech concerned matters of public concern, and, therefore, was protected by the United States Constitution as a matter of law, and that no legitimate governmental interest or purpose was served by the denial of Plaintiffs' First Amendment rights. (Dkt.1). Plaintiffs also allege that Defendant's proffered reasons for Plaintiffs' terminations were merely a pretext, and the real reason for Plaintiffs' terminations was to suppress their free speech and to retaliate against Plaintiffs for making such speech. (Dkt.1).

As to Count III, Plaintiffs seek the issuance of a Writ of Certiorari based upon a quasi-judicial action performed by Cheatham, i.e., the due process hearing, on behalf of Defendant, brought pursuant to Rule 9.100 of the Florida Rules of Appellate Procedure. (Dkt.1). Count III is plead cumulatively, and, in the alternative, to Counts I and II. (Dkt.1). Plaintiffs allege that Defendant's investigation into Plaintiffs' alleged violations did not comport with the essential requirements of law, in that: (a) Defendant commenced an investigation to find facts to support Plaintiffs' alleged violations, rather than having such facts before suspending Plaintiffs; (b) that Defendant failed to apprise Plaintiffs of all of the charges, with specificity, levied against Plaintiffs at the time that Plaintiffs were suspended on November 17, 1999; (c) that Cheatham and Defendant's attorney made public statements to the media and the citizens of the Defendant City, which appear to attribute fault to Plaintiffs even prior to the conclusion of the investigation; and (d) that Defendant failed to provide Plaintiffs with a constitutionally name-

clearing hearing before an impartial and unbiased decision-maker. (Dkt.1). Plaintiffs also claim that Defendant's decision to terminate Plaintiffs was; (a) in whole, or part, unsupported by competent and substantial evidence; (b) in whole, or part, contrary to record evidence properly introduced at the due process hearing before Cheatham; and (c) in whole, or part, contrary to, or not in compliance with, the policies of Defendant and the Constitutions of the United States and the State of Florida. (Dkt.1).

With respect to Count III, Plaintiffs pray for relief in the form of: (a) the issuance of a Summons in Certiorari to Defendant directing Defendant to show cause why relief should not be granted in favor of Plaintiffs; (b) after receiving Defendant's response, setting this matter for a hearing; and (c) thereafter, upon consideration of the record as a whole and arguments of the parties, granting the Writ and quashing Cheatham's decision, on behalf of Defendant, to terminate Plaintiffs, and remanding the matter to Defendant with instructions to vacate Plaintiffs' terminations and reinstate Plaintiffs to their former positions with back pay and benefits. (Dkt.1). In the alternative to (c), above, Plaintiffs argue that the matter be remanded to Defendant, with instructions to enter a further order assessing such disciplinary action against Plaintiffs, short of termination, and that Plaintiffs be afforded a hearing before an unbiased decision-maker. (Dkt.1).

## II. *Jurisdiction*

This Court has jurisdiction over the Federal claims, as set forth in Counts I and II, pursuant to 28 U.S.C. §§ 1331 and 1343. Count III of Plaintiffs' Complaint is a pendent state claim; however, this Court may exercise supplemental jurisdiction over Count III, in that Count III is related to Plaintiffs' Federal claims and forms part of the same case, pursuant to 28 U.S.C. § 1367(a).

## III. *Motion to Strike*

### A. *Standard of Review*

██ Federal Rule of Civil Procedure 12(f) provides that upon motion by a party, or upon the court's initiative at any time, the court may order stricken from any pleading any "redundant, immaterial, impertinent, or scandalous matter." A motion to strike will "usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Seibel v. Society Lease, Inc.*, 969 F.Supp. 713, 715 (M.D.Fla. 1997); *see also Poston v. American President Lines, Ltd.*, 452 F.Supp. 568, 570 (S.D.Fla.1978) (citing *Augustus v. Board of Public Instruction*, 306 F.2d 862 (5th Cir. 1962)).

### B. *Analysis*

Defendant moves to strike portions of Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss, (Dkt.11), on the grounds that it contains material misrepresentations of fact and/or law. (Dkt.14). Defendant claims that these alleged material misrepresentations, if allowed to stand, could mislead the Court. (Dkt.14). To begin with, Defendant moves to strike footnote three (3) on page seven (7) of Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss, (Dkt.11), because it states that Sheffield had "final policymaking authority [for] recommending personnel action." (Dkts.11, 14). Defendant argues that this is an egregious misrepresentation because it

does not accurately reflect the precise language, with respect to Sheffield's authority, that is set forth within Plaintiffs' and Defendant's Joint Stipulation of Facts, (Dkt.10). (Dkt.14).

The Court finds that it is not necessary to strike footnote three (3), since the Court recognizes the precise language included within the Joint Stipulation of Facts, (Dkt.10), as to the actual authority that Sheffield possessed, with respect to recommending personnel actions to Cheatham. Therefore, Defendant's Motion to Strike footnote three (3), on page seven (7) of Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss, (Dkt.11), is denied.

■ Defendant also seeks to strike the first two (2) paragraphs on page eleven (11) of Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss, (Dkt.11), including the quotation from Rule 36–2 of the Eleventh Circuit Rules, on the grounds that they misrepresent the legal status of the decision from *Nero v. Hospital Authority of Wilkes County,* 86 F.Supp.2d 1214 (S.D.Ga.1998), *affirmed,* 202 F.3d 288 (11th Cir.1999). (Dkt.14). This Court is well aware of the decision set forth in *Nero,* as well as the proposition that it stands for. Insofar as Plaintiffs' Memorandum refers to the *Nero* case as an unpublished opinion, this is a mistake. The Eleventh Circuit's affirmance of the district court's decision in that case is the only unpublished opinion. Defendant, however, cites to the district court opinion in the *Nero* case, which is published in Federal Supplement Second, not to the Eleventh Circuit affirmance. Since Defendant cites to the published opinion of the *Nero* case, then it is not an unpublished opinion which would be governed by Rule 36–2 of the Eleventh Circuit Rules, as

Plaintiffs argue. Therefore, the Court finds that the last sentence of the first paragraph on page eleven (11) of Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss, (Dkt.11), including the quotation from Rule 36–2 of the Eleventh Circuit Rules, and the first sentence of the second paragraph on page eleven (11) of Plaintiffs' Memorandum, should be stricken. The remainder of those two (2) paragraphs shall remain intact and unaltered.

■ Finally, Defendant argues that the last three (3) paragraphs on page sixteen (16) of Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss, (Dkt.11), should be dismissed because they state that Plaintiffs "shall undertake to prepare an Appendix of Exhibits, with the assistance of [Defendant's] counsel." (Dkt.14). Defendant further argues that Plaintiffs' contention that sixteen (16) of the "most critical exhibits" have already been attached, and contain essentially all of the key documents regarding the allegations against Plaintiffs, is manifestly untrue. (Dkt.14).

The Court does not find it necessary to strike any portions of the last three (3) paragraphs of Plaintiffs' Memorandum. Plaintiffs have already stated that an Appendix will be submitted shortly, and in further support of this, Plaintiffs have even filed a Motion to Compel Defendant to Prepare the Record, (Dkt.19). As such, Defendant's Motion to Strike the last three (3) paragraphs, on page sixteen (16) of Plaintiffs' Memorandum, is denied.

C. *Conclusion*

Defendant's Motion to Strike, (Dkt.14), footnote three (3), on page seven (7) of Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss, (Dkt.11),

and, the last three (3) paragraphs on page sixteen (16), is denied. The Court finds that the last sentence of the first paragraph on page eleven (11), of Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss, (Dkt.11), including the quotation from Rule 36-2 of the Eleventh Circuit Rules, and the first sentence of the second paragraph on page eleven (11) of Plaintiffs' Memorandum, should be stricken. The remainder of the first two (2) paragraphs on page eleven (11), however, shall remain intact and unaltered. Therefore, Defendant's Motion to Strike, (Dkt.14), those portions of Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss, (Dkt.11), on page eleven (11), is granted.

## IV. Motion to Dismiss

### A. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint and requests that the court determine whether the complaint sets forth sufficient allegations to establish a claim for relief. Under *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), a district court should not dismiss a complaint for failure to state a claim solely on the pleadings, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Additionally, when deciding a motion to dismiss, a court must accept the truthfulness of well-pleaded facts and resolve them in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Beck v. Deloitte et al.*, 144 F.3d 732, 735–36 (11th Cir.1998) (quoting *St. Joseph's Hosp. Inc. v. Hospital Corp. of America*, 795 F.2d 948, 954 (11th Cir.1986)). Using this standard, the Court turns to consideration of the claims asserted.

### B. Procedural Due Process Claim

■ In Count I, Plaintiffs claim that Defendant deprived Plaintiffs of their procedural due process rights, as guaranteed by the Fourteenth Amendment to the United States Constitution. (Dkt.1). This claim is brought by Plaintiffs under 42 U.S.C. § 1983. (Dkt.1). Plaintiffs allege that they have been deprived of their property interest in continued employment with Defendant, without procedural due process of law, and that no effective remedy exists at law. (Dkt.1).

Defendant seeks the dismissal of Count I, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted, and for lack of subject matter jurisdiction. (Dkt.3). In support of this, Defendant argues that Plaintiffs' procedural due process claim, as set forth in Count I, is barred by the Eleventh Circuit decision in *McKinney v. Pate*, 20 F.3d 1550 (11th Cir.1994).

■ In *McKinney*, the court considered the question of whether a procedural due process violation would lie in the employment case before the court. *See id.* The Eleventh Circuit concluded that Florida law provides, through certiorari review by Florida courts, an adequate means for review of quasi-judicial employment terminations. *See id.* at 1563–64. Therefore, even if allegations regarding procedural defects at the administrative level, brought by a public employee of Florida, were true, Florida's certiorari procedures satisfy a plaintiff's due process rights, and "alleviate any deprivation" the employee may have suffered. *See id.* at 1564.

In addition, as this Court has previously recognized, the inability of Plaintiffs to allege that the State of Florida has refused to make available a means through which to remedy Plaintiffs' alleged deprivation is fatal to Plaintiffs' Federal due process claim. *See Henniger v. Pinellas County,* 7 F.Supp.2d 1334, 1338 (M.D.Fla.1998); *see also Horton v. Board of County Commissioners of Flagler County,* 202 F.3d 1297, 1301 (11th Cir.2000); *Flint Electric Membership Corp. v. Pataula Electric Membership Corporation,* 68 F.3d 1309, 1313 (11th Cir.1995), *on rehearing* 77 F.3d 1321 (11th Cir.1996); *Stewart v. Town of Zolfo Springs,* 1997 WL 689448, *2 (M.D.Fla. 1997). Furthermore, the Eleventh Circuit has made it patently clear that, for the reasons discussed in *McKinney,* district courts lack subject matter jurisdiction over these kinds of alleged federal due process violations by a municipality in Florida, because Florida gives aggrieved persons [the right to repair to the Florida circuit court]. *Boatman v. Town of Oakland,* 76 F.3d 341, 346 (11th Cir.1996).

As such, Count I of Plaintiffs' Complaint is hereby dismissed for lack of subject matter jurisdiction, and for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), as discussed herein.

## C. *First Amendment Claim*

■ In Count II, Plaintiffs allege that Defendant deprived Plaintiffs of their right to freedom of speech, as protected by the First and Fourteenth Amendments to the United States Constitution. (Dkt.1). This claim is also brought under 42 U.S.C. § 1983. (Dkt.1). Plaintiffs also allege that Defendant's proffered reasons for Plaintiffs' terminations were merely a pretext, and the real reason for Plaintiffs' terminations was to suppress their free speech and to retaliate against Plaintiffs for making such speech. (Dkt.1).

Defendant seeks the dismissal of Count II, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. (Dkt.3). It appears to the Court, that Plaintiffs' allegations with respect to Plaintiffs' First Amendment claim are based upon the purported motivations of Sheffield. As was previously noted, Plaintiffs allege that Sheffield "erroneously" presumed that Plaintiffs were responsible for the news story, with respect to Sheffield's storage of his personal boat on Defendant's property, that resulted in Sheffield receiving a written reprimand from Cheatham. (Dkt.1). Plaintiffs further argue that Sheffield sought termination of Plaintiffs' employment, for Plaintiffs "speaking the truth" about alleged favoritism and abuses within Defendant's Department of Leisure Services, as well as for speaking out about alleged policy violations committed by Sheffield. (Dkt.1). However, it has already been clearly established by the Court, and through Plaintiffs' and Defendant's Joint Stipulation of Facts, (Dkt.10), that Cheatham was the individual who was the final policymaker for Defendant, with regard to employment decisions, and possessed the authority to either accept or reject any termination of employment that Sheffield recommended. (Dkt.10).

■ The Eleventh Circuit has held that a municipality may be held liable, under 42 U.S.C. § 1983, for a single illegal act that is committed by one of its officers; however, the municipality cannot be held liable on a theory of respondeat superior. *See Scala v. City of Winter Park,* 116 F.3d 1396, 1399 (11th Cir.1997) (citing *Monell v. Department of Social Services,* 436 U.S.

658, 693–94, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978)). Instead, § 1983 liability may be premised upon a single illegal act by a municipal officer only when the challenged act may fairly be said to represent official policy, such as when that municipal officer possesses final policymaking authority over the relevant subject matter. *See id.* Since Sheffield did not have final policymaking authority, Sheffield's recommendation to Cheatham, regarding the terminations of Plaintiffs, did not represent official policy as a result of which Defendant can be held liable under 42 U.S.C. § 1983.

■ Since it has been recognized that Cheatham, instead, had the final policymaking authority for Defendant, with respect to employment decisions, the Court now turns to the issue of whether Cheatham's actions constitute an illegal act and the official policy of Defendant. Plaintiffs' Complaint fails to allege a valid First Amendment violation based on Cheatham's actions taken to uphold Sheffield's recommendation as to Plaintiffs' terminations. In order for Defendant to be responsible for Cheatham's actions, Plaintiffs must show that Cheatham "not only accepted the recommendation of [Sheffield], but knew of and ratified the improper motives behind [Sheffield's] recommendation." *Gattis v. Brice,* 136 F.3d 724, 727 (11th Cir.1998). Plaintiffs allege that Sheffield's recommendation for Plaintiffs' terminations was retaliatory in nature; however, Plaintiffs' Complaint fails to allege any facts establishing that Cheatham learned of Sheffield's purported improper motives from other sources.

■ There are four elements which must be met, in order to establish a valid First Amendment claim: (1) whether the employee's speech involves a matter of public concern; (2) whether the employee's interest in speaking outweighs the government's legitimate interests in efficient public service; (3) whether the speech played a substantial part in the government's challenged employment decision; and (4) whether the government would have made the same employment decision in the absence of the protected conduct. *See Arenal v. Punta Gorda,* 932 F.Supp. 1406, 1411 (M.D.Fla.1996). In order to determine whether speech satisfies the "public concern" requirement, the Court must "analyze its 'content, form and context . . . as revealed by the whole record,' and evaluate whether [Plaintiffs'] purpose was 'to raise issues of public concern, on the one hand, or to further [Plaintiffs'] own private interest[s], on the other.'" *See Gonzalez v. Lee County Housing Authority,* 161 F.3d 1290, 1296–97 (11th Cir.1998).

■ It appears to the Court in the present case, that Plaintiffs' "speech," in the form of evidence proffered in defense of their recommended terminations, "was primarily motivated by [Plaintiffs'] rational self-interest[s] in improving the conditions of [Plaintiffs'] employment." *Maggio v. Sipple,* 211 F.3d 1346, 1352–53 (11th Cir. 2000). Plaintiffs were essentially concerned and motivated by Plaintiffs' respective self-interests in retaining their jobs. The Eleventh Circuit has stated that they "will not permit an employee to manufacture First Amendment protection (thereby job security) by complaining on a matter related to a social concern." *Morgan v. Ford,* 6 F.3d 750, 755 n. 7 (11th Cir.1993); *see also Morris v. Crow,* 142 F.3d 1379, 1382 (11th Cir.1998) ("Not only must the speech be related to matters of public interest, but the purpose of the expression must be to present such issues as matters

of 'public' concern."); *Johnson v. Clifton,* 74 F.3d 1087, 1092 (11th Cir.1996) ("If the relevant speech was motivated by personal concerns instead of public concerns then it is not protected by the First Amendment in this context.") (citing *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690–91, 75 L.Ed.2d 708 (1983)). Furthermore, because Plaintiffs have failed to meet the first element needed in order to establish a valid First Amendment claim, i.e., that Plaintiffs' speech involved matters of public concern, the Court will not address whether the speech meets the remaining three elements.

Since Sheffield did not possess final policymaking authority with respect to employment decisions, the Court finds that Defendant cannot be held liable for violating Plaintiffs' First Amendment rights. In addition, with respect to Cheatham's role as the final policymaker for Defendant's employment decisions, the Court finds that Defendant is not liable for violating Plaintiffs' First Amendment rights because there is no evidence that Cheatham acted with improper motivation in upholding Sheffield's recommendation as to Plaintiffs' terminations. Additionally, Plaintiffs have failed to establish a *prima facie* case of a violation of Plaintiffs' First Amendment rights, in that there is insufficient evidence to establish that Plaintiffs' speech involved matters of public concern. Therefore, the Court finds it appropriate to grant Defendant's Motion to Dismiss, as to Count II. As such, Count II is hereby dismissed for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

### D. *Writ of Certiorari Claim*

As to Count III, Plaintiffs seek the issuance of a Writ of Certiorari for appellate review of a quasi-judicial order by Cheatham, on behalf of Defendant, terminating Plaintiffs' employment, brought pursuant to Rule 9.100 of the Florida Rules of Appellate Procedure. (Dkt.1). Count III is plead cumulatively, and, in the alternative, to Counts I and II. (Dkt.1).

Defendant seeks dismissal of Count III, because Defendant argues that Plaintiffs' allegations fail to establish a valid basis for relief that would justify the issuance of a summons and an order to show cause under Rule 1.630 of the Florida Rules of Civil Procedure, and under Rule 9.100(f) of the Florida Rules of Appellate Procedure. (Dkt.3). Defendant also contends that the Court should decline to exercise supplemental jurisdiction over this pendent state claim, pursuant to 28 U.S.C. § 1367(c). (Dkt.3).

 There is a three-part standard of review which must be met before court review of an administrative agency decision is available. The three step standard asks: (1) whether procedural due process was accorded; (2) whether the essential requirements of law have been observed; and (3) whether the administrative findings and judgment are supported by competent and substantial evidence. *See Haines City Community Development v. Heggs,* 658 So.2d 523, 530 (Fla.1995) (citing *City of Deerfield Beach v. Vaillant,* 419 So.2d 624, 626 (Fla.1982)).

 Plaintiffs have failed to provide the Court with concrete factual evidence, in the form of a record from the prior due process proceeding in question. The record would allow this Court to review the administrative proceeding to determine whether due process and the essential requirements of law were observed, and if the decision was based on substantial evi-

dence. Rule 9.100(e) of the Florida Rules of Appellate Procedure requires an appendix, "if the petition seeks an order directed to a lower tribunal." Similarly, Rule 9.220 of the Florida Rules of Appellate Procedure requires the petitioner, in this case Plaintiffs, "to prepare and transmit [in the appendix] copies of such portions of the record deemed necessary to an understanding of the issues presented." Thus, the petitioner in a certiorari proceeding has the burden of including in the appendix, "such parts of the original record as would demonstrate, without resort to the record on appeal, that error requiring reversal had been committed below." *Walton v. City of Clermont*, 109 So.2d 403, 405 (Fla. 2nd DCA 1959). In addition, a reviewing court's consideration in a certiorari proceeding is restricted solely to the record of the proceeding that was conducted by the administrative agency. *See Dade County v. Marca, S.A.*, 326 So.2d 183, 184 (Fla.1976). Therefore, the Court finds it necessary to dismiss Count III of Plaintiffs' Complaint.

■ Even if Plaintiffs had included a proper record of the prior administrative due process proceeding, dismissal of Count III of Plaintiffs' Complaint is still necessary. Pursuant to 28 U.S.C. § 1367(c)(3), the Court may decline supplemental jurisdiction over Count III of Plaintiffs' Complaint because the Court has dismissed all other claims, Counts I and II, over which it has original jurisdiction. Additionally, as was mentioned by the Court in its analysis of Count I, Plaintiffs have failed to completely avail themselves of, and fully exhaust, their administrative remedies prior to bringing suit in this Court. Plaintiffs would be better served to proceed with Plaintiffs' pendent state claim for Writ of Certiorari in the proper state court.

Therefore, the Court finds it appropriate to grant Defendant's Motion to Dismiss, as to Count III. As such, Count III is hereby dismissed, pursuant to 28 U.S.C. § 1367(c)(3), and for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

### IV. *Conclusion*

With respect to Defendant's Motion to Strike, (Dkt.14), footnote three (3), on page seven (7) of Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss, (Dkt.11), and the last three (3) paragraphs, on page sixteen (16), Defendant's Motion to Strike is denied. The Court finds that the last sentence of the first paragraph on page eleven (11) of Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss, (Dkt.11), including the quotation from Rule 36–2 of the Eleventh Circuit Rules, and the first sentence of the second paragraph on page eleven (11) of Plaintiffs' Memorandum, should be stricken. The remainder of the first two (2) paragraphs on page eleven (11), however, shall remain intact and unaltered. Therefore, Defendant's Motion to Strike, (Dkt.14), those portions of Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss, (Dkt.11), on page eleven (11), is granted.

This Court finds it appropriate to grant Defendant's Motion to Dismiss, (Dkt.3). Therefore, Counts I, II, and III of Plaintiffs' Complaint are hereby dismissed, without prejudice, for lack of subject matter jurisdiction, and for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), as discussed herein. The Court is also declining to exercise supplemental jurisdiction over Count III of

Plaintiffs' Complaint, pursuant to 28 U.S.C. § 1367(c)(3). Plaintiffs also made a Motion to Hold Count III of Plaintiffs' Complaint in Abeyance, (Dkt.19), until an order was entered requiring Defendant to pay for, and prepare, the transcript record of the proceedings below. However, since the Court has dismissed Plaintiffs' claims, then Plaintiffs' Motion to Hold Count III in Abeyance is hereby denied as moot. Accordingly, it is:

**ORDERED** that Defendant, City of Winter Haven's, Motion to Strike Portions of Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss, (Dkt.14), be **GRANTED, IN PART, AND, DE-NIED, IN PART**, that Defendant's Motion to Dismiss, (Dkt.3), be **GRANTED**, with Plaintiffs' claims being **DISMISSED, WITHOUT PREJUDICE**, and that Plaintiffs' Motion to Hold Count III in Abeyance, (Dkt.19), be **DENIED, AS MOOT**.