[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 18, 2007
THOMAS K. KAHN
CLERK

No. 06-15647
Non-Argument Calendar
_____

D. C. Docket No. 02-02881-CV-CC-1

RUFUS J. DICKERSON, JR.,

Plaintiff-Appellant,

versus

JAMES E. DONALD,
WARDEN BILLY THOMPKINS,
Hays State Prison,
DEPUTY WARDEN ROY EDGERTON,
Hay's State Prison,
KEN CARSON,
Unit Manager, S.M.U., Hay's
State Prison,
BETTY B. DEAN,
D/W Care & Treatment, Hay's
State Prison, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(October 18, 2007)**

Before MARCUS, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Rufus J. Dickerson, Jr., a state prisoner proceeding pro se, appeals the district court's grant of summary judgment to all defendants in his 42 U.S.C. § 1983 civil rights complaint. In his twice-amended complaint, Dickerson sued 22 defendants, including wardens, deputy wardens, officers, and clerks at Hay's State Prison, as well as Jim Wetherington, then-Commissioner of the Georgia Department of Corrections. On appeal, Dickerson argues the district court erred by granting summary judgment, and challenges the district court's denial of his motion to file a supplemental complaint. After careful review, we affirm.

In his second amended complaint, Dickerson alleged, among other things, the following: (1) that Stephen Upton had filed frivolous disciplinary reports against him and raised his security level because he refused to enter a prison therapy program; (2) that Dr. Howard Derrick had been deliberately indifferent to his medical needs following a physical altercation with prison officers; (3) that Robert Dekle, Jan Chapman, Kelly Floyd, and Patricia Robinson had interfered with his legal mail; (4) that Dekle, Chapman, Floyd, and Robinson, as well as defendants Betty Dean, Cynthia Barksdale, Jose Lopez, Sherman Davis, Joyce Pledger, Tammy Norton, and Charles Thompson, all at various times retaliated

2

against him because of grievances he had filed with the prison; (5) that defendants Commissioner Wetherington and Dean, Billy Tompkins, Roy Edgerton, and Ken Carson, who were all wardens at the prison, were liable as supervisors for the acts of the other defendants; and (6) that defendants Terry Gardner, Joel Wooten, Stephen Johnson, Charles Pope, and Charles Brown had at various times and in various ways used excessive force against him. In its 42-page order, the district court analyzed each of these claims and explained how and why Dickerson had failed to establish a genuine issue of material fact to preclude entry of judgment on all claims. The district court also concluded that summary judgment was warranted because Dickerson had not alleged a violation of his rights, and that Dickerson was not entitled to filed a supplement to the second-amended complaint.

We review the district court's denial of a motion to file a supplemental complaint for an abuse of discretion. See Harris v. Garner, 216 F.3d 970, 988 n.6 (11th Cir. 2000). According to Federal Rule of Civil Procedure 15(d):

> Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense.

Fed. R. Civ. P. 15(d).

The district court denied Dickerson's motion to file a supplemental complaint because the court found that doing so would delay the disposition of this case and prejudice the defendants. In so finding, the court highlighted that the proposed supplement only concerned events that took place at least two years after the incidents alleged in the amended complaints, that a supplemental complaint would make the case even more complex, and the proposed supplement included unexhausted claims. The district court also noted that Dickerson had not served his motion on opposing counsel. On this record, even if we might have decided the motion another way, the district court did not abuse its discretion by disallowing the supplement, for the reasons enumerated by the district court. See Drew v. Department of Corrs., 297 F.3d 1278, 1293 n.7 (11th Cir. 2002).

We likewise discern no reversible error in the district court's grant of summary judgment, an issue we review de novo, "applying the same standard as the district court [and viewing] all evidence and factual inferences reasonably drawn from the evidence in the light most favorable to the non-moving party." Burton v. Tampa Housing Auth., 271 F.3d 1274, 1276-77 (11th Cir. 2001). "A grant of summary judgment may be upheld on any basis supported by the record." Id. at 1277.

4

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). Rather, a nonmoving party must produce "evidence that a reasonable factfinder could return a verdict in its favor." Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001). In this regard, legal conclusions, evidence not admissible at trial, and conclusory allegations are all insufficient. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Similarly, statements in affidavits that are based, in part, upon information and belief, instead of only knowledge, do not raise genuine issues of fact. Pace v. Capobianco, 283 F.3d 1275, 1278-79 (11th Cir. 2002).

5

As for Dickerson's various challenges to the district court's entry of summary judgment, after a de novo review of the record, we discern no error in the district court's analysis. First, the district court entered summary judgment as to Dickerson's retaliation claim against Officer Upton, because the claim was barred by the two-year statute of limitations. Dickerson had exhausted his administrative appeals of three disciplinary reports in June 2000, but did not file his original complaint until October 2002.

The district court entered summary judgment on Dickerson's remaining claims based on Dickerson's utter failure to present any evidence, either in support of his claims or to dispute, in any material way, the evidence submitted by the defendants in support of summary judgment. For example, the district court entered summary judgment on the excessive-force claim based on the cell flooding incident, during which Dickerson was removed from his cell after the sprinkler system was activated, where it was undisputed that there was no force, let alone excessive force, and no injury to Dickerson. As for the excessive-force claim based on the restraints incident, it likewise was undisputed that Dickerson, while being escorted from the prison's visitation area to his cell, was belligerent and uncooperative and yelled obscenities at the escorting prison guards. Cf. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999) (in evaluating claim of excessive

force, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously or sadistically to cause harm." (citation omitted)); see also Hudson v. McMillian, 503 U.S. 1, 9 (1992) (noting that "not every malevolent touch be a prison guard gives rise to a federal cause of action"). On this record, the district court did not err by entering summary judgment on these claims, on which there were no disputed material facts.[1]

Dickerson asserted a number of retaliation claims, most based on disciplinary actions taken against him after, it was undisputed, he committed various violations of Georgia Department of Corrections ("GDOC") procedures and policies. We pause to highlight that these actions followed disciplinary violations, rather than Dickerson's exercise of his right of free speech under the First Amendment. See Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) ("[T]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech."); Gattis v. Brice, 136 F.3d 724, 726 (11th Cir. 1998) (holding

---

[1] The district court also found, and we agree, that there were no issues of material fact on the following claims: (1) the excessive-force claim against Sergeant Brown based on his removal of the restraints; (2) the claim of deliberate indifference to medical needs against Dr. Derrick, based on his treatment of Dickerson after the restraints incident; (3) the interference-with-mail and retaliation claims based on Dickerson's allegation that his mail was withheld by defendants Chapman, Floyd and Robinson; (4) the retaliation claim against Barksdale based on his alleged exclusion of Dickerson from the Commissary; and (5) the retaliation claim against Pledger based on his alleged denial of access to the vending machines.

that "to succeed in a . . . claim of retaliation for speech, the plaintiff must show that his speech was a 'substantial' or 'motivating' factor in the allegedly retaliatory decision."). Thus, the district court concluded that defendant Davis was entitled to summary judgment based on his search for and confiscation of contraband in Dickerson's cell, contrary to GDOC policy, and subsequent filing of a disciplinary report, on which Dickerson ultimately was convicted. The retaliation claim against defendant Lopez was based on Dickerson's placement in administrative segregation. As the district court noted, it was undisputed that Dickerson was placed in segregation for his own protection, pursuant to GDOC policy, and only after Dickerson, himself, told Lopez that he could not live in the general prison population. On this record, we discern no error in the district court's analysis of Dickerson's various retaliation claims.[2]

The district court also entered summary judgment on Dickerson's various claims regarding supervisory liability. First, the district court found that because Tompkins, Dean, Carson, and Wetherington did not recall getting any letters from Dickerson, Dickerson could "hardly establish that they personally participated in" the violations he alleged. See Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir.

---

[2]The district court also committed no error in entering summary on Dickerson's retaliation claim against Dekle based on Dekle's alleged refusal to provide Dickerson with grievance forms, and the retaliation claim based on Officer Norton's and Officer Thompson's search of Dickerson's cell for contraband, again pursuant to GDOC policy.

2007), petition for cert. filed, (No. 07-86) (July 23, 2007) ("[s]upervisory liability under § 1983 occurs when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation"). The district court further found that although Edgerton did recall getting letters from Dickerson, because Edgerton stated that he responded to the letters in compliance with GDOC procedures and Dickerson's allegations were meritless, Dickerson could not show that Edgerton was liable. Moreover, the court noted that to the extent that Dickerson had failed to show any constitutional violation by the other officers, none of the supervisory officials could be held liable either, and therefore they were all entitled to summary judgment.

Finally, the court addressed the issue of qualified immunity, finding that by the very terms of Dickerson's allegations, all of the defendants had been acting "within their discretionary authority," and that Dickerson had failed to establish any constitutional violations. Qualified immunity "shields governmental officials executing discretionary responsibilities from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1300 (11th Cir. 2007) (quotation marks omitted). It is

9

undisputed that all of the defendants here were acting according to their discretionary responsibilities during all of the incidents alleged. See Harbert Intern., Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998) ("a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties"). Moreover, as we have already noted, the district court properly found that the defendants did not violate Dickerson's rights. Accordingly, because it is clear that the defendants were executing discretionary responsibilities and did not violate Dickerson's rights, they were protected by qualified immunity.

We are unpersuaded by Dickerson's additional arguments. Accordingly, we affirm the entry of summary judgment, in favor of the defendants, on all of Dickerson's claims.

**AFFIRMED.**